NORTHWESTERN BELL TELEPHONE CO., INC., d/b/a US West Communications, Plaintiff and Appellee,

v.

Kenneth D. STOFFERAHN, Defendant and Appellant,

and

State of South Dakota and the Public Utilities Commission of the State of South Dakota, Intervenors.

Nos. 16856, 16861.

Supreme Court of South Dakota.

Argued March 21, 1990.

Decided Sept. 12, 1990.

Thomas J. Welk and Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, and William P. Heaston, Omaha, Neb., for plaintiff and appellee.

C.E. Light of Light Law Office, Yankton, for defendant and appellant.

Diane Best, Asst. Atty. Gen., Pierre, for intervenors; Roger Tellinghuisen, Atty. Gen., on the brief.

TAPKEN, Circuit Judge.

Kenneth D. Stofferahn (Stofferahn) appeals from a circuit court declaratory judgment which prohibited Stofferahn from participating as a member of the Public Utilities Commission (PUC) in certain pending and future cases involving Northwestern Bell Telephone Co., Inc., d/b/a US West Communications (USWC). USWC has filed a notice of review challenging the trial court's refusal to grant a writ of mandamus requiring Stofferahn to disqualify himself in all future PUC proceedings involving USWC. We affirm in part and reverse in part.

Stofferahn was first elected to the PUC in 1978 and has continuously served in that capacity. His current term will expire at the end of 1990.

In 1987 and 1988, the South Dakota legislature considered bills to deregulate the telecommunication industry. No deregulation legislation was enacted in 1987 but Senate Bill 42 (SB 42) was adopted in 1988.[1] In both of those years there is little question that Stofferahn became a zealous and active opponent of deregulation legislation under consideration. He issued press releases, gave public speeches, and testified in front of legislative committees, expressing his opposition to the proposed legislation. His words and actions left little doubt of his opinion of USWC which was a proponent of the legislation.

Pursuant to SDCL 49–1–9,[2] USWC on November 22, 1988, asked Stofferahn to disqualify himself as a member of the PUC for the remainder of his term in any pending or future proceedings where USWC

---

1. SB 42, deregulation legislation adopted by the 1988 South Dakota Legislature, is now codified in SDCL Chapter 49–31.

2. SDCL 49–1–9 provides:
   Such public utilities commission may in all cases conduct its proceedings, when not otherwise particularly prescribed by law, in such manner and places as will best conduce to the proper dispatch of business and to the ends of justice.
   A majority of the commissioners shall constitute a quorum for the transaction of business, but no commissioner shall participate in any hearing or proceeding in which he has any conflict of interest or if he is temporarily incapacitated. If a commissioner determines that he is incapacitated or disqualified from participating for any reason in any hearing or proceeding, he shall certify that determination to the Governor, or if the character of the incapacity of any commissioner is such that he is unable to certify his incapacity to the Governor, the commission may make such certification. In the event of any such certification, the Governor shall then appoint an elected constitutional officer, other than the attorney general, to act as a member of the commission in place of the disqualified or incapacitated commissioner for the purpose of such hearing or proceeding only.

was or might be a party. Stofferahn refused the request. USWC started an action against Stofferahn seeking declaratory relief and mandamus based upon allegations of bias and prejudice as a result of Stofferahn's activities and statements involving deregulation legislation in 1987 and 1988.

The trial court bifurcated the trial issues and conducted two separate hearings. The first hearing, held on January 4, 1989, was limited to the four deregulation dockets then pending before the PUC. The trial court found that Stofferahn's public statements and conduct relating to SB 42 required his disqualification from participating as a member of the PUC on the four pending deregulation dockets.[3] The trial court issued a writ of mandamus compelling Stofferahn's disqualification in the four pending deregulation dockets. Stofferahn appealed that decision to this court but subsequently abandoned the appeal and certified his disqualification to the Governor pursuant to SDCL 49–1–9.

The second trial relating to USWC's request for a blanket disqualification of Stofferahn on all pending and future cases where USWC was or would be a party began June 13, 1989. As a result, the trial court entered a declaratory judgment which disqualified Stofferahn "in all pending and future dockets involving USWC where a timely request for disqualification has been made, and where the material facts, law or policy involved in the docket involves the deregulation or classification of telecommunication services, or involves the determination of the competitive status of telecommunication services." The trial court denied USWC's request that Stofferahn be disqualified in all other cases.

The trial court adopted lengthy findings of fact about Stofferahn's bias against USWC: Stofferahn made apparent references to USWC as "jackals in lambskins"; Stofferahn made statements to a legislative committee vigorously attacking the credibility of Dr. Frank Alessio, a witness for USWC during the legislative process in 1987; Stofferahn adhered to and would continue to adhere to economic theories which were adverse to the economic theories supported by USWC; Stofferahn obtained and adhered to economic theories of individuals obtained outside any official PUC investigation while a member of the PUC; Stofferahn made reference to USWC by stating, "This Bill [SB 42], which Northwestern Bell so desperately wants, represents the biggest premeditated robbery since Jesse James rode the plains, except he had more ethics. He only stole from the rich!"; Stofferahn became an active member of organizations which opposed SB 42 and his personal expenses were paid by these organizations; Stofferahn became actively involved in a referendum process after the passage of SB 42 in 1988 in an attempt to defeat the legislation by referendum; and Stofferahn referred to USWC in a press release stating that USWC was "lying to the public about wanting fair competition" and the deregulation effort was "blatantly anti-competitive ... and is nothing more than a hoax and a planned rip-off of the public." The trial court based the declaratory judgment upon these basic findings.

■ Stofferahn argues that pursuant to SDCL 49–1–9, he determined that he had no conflict of interest and was not incapacitated, and should not have been disqualified from participating in any cases involving USWC. Even though SDCL 49–1–9 appears to be permissive and subjective in nature as it relates to the disqualification of a PUC commissioner, i.e., the respective commissioner determines if he should be disqualified, this court has held that a fair trial in a fair tribunal is a basic requirement of due process which is applicable to administrative agencies. *Strain v. Rapid City School Bd.*, 447 N.W.2d 332 (S.D. 1989). In *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501, 505 (1974) we indicated that the trier of fact must be disinterested and free from bias or predisposition of the

---

**3.** The four pending deregulation dockets were referred to and identified as Dockets F–3741, 3742, 3743, and 3744.

outcome and the "very appearance of complete fairness" must be present (quoting *Wall v. American Optometric Association, Inc.*, 379 F.Supp. 175 (N.D.Ga.1974)). In *South Dakota Real Estate Com'n. v. Haggar*, 446 N.W.2d 66, 68 (S.D.1989) we stated, "'Appearance of fairness' is of course sought in each case, but the standard to be applied is 'due process'." Accordingly, under the due process clause of the federal and state constitutions, the trial court has authority to determine and declare the rights and status of the parties relating to whether a PUC commissioner has any conflict of interest, even though the commissioner refuses to disqualify himself. SDCL 21–24–1; *South Dakota Real Estate Com'n. v. Haggar, supra; Application of Union Carbide Corp.*, 308 N.W.2d 753 (S.D.1981).

■ We apply the following principles to the present case. Administrative officials are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances. *Moran v. Rapid City Area School Dist.*, 281 N.W.2d 595 (S.D.1979); *United Steelworkers of America, Etc. v. Marshall*, 647 F.2d 1189 (D.C.Cir.1980); *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); *Skelly Oil Company v. Federal Power Commission*, 375 F.2d 6 (10th Cir.1967). Further, an official is not necessarily disqualified to hear a particular case when the official has a predisposition derived from participation in earlier proceedings on the same issue or because expressed or developed opinions have been acquired from his work experience. *Strain v. Rapid City School Bd., supra; Federal Trade Com. v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed 1010 (1948); *United Steelworkers, Etc. v. Marshall, supra.* If an official reflects subjective partiality, this does not mean a proceeding conducted in good faith is necessarily invalidated. *Lead Industries Ass'n. v. Environmental Protection*, 647 F.2d 1130 (D.C.Cir.1980). This court has recognized a distinction between an agency's findings in an adjudicatory proceeding and a rule-making proceeding. *Application of Union Carbide, supra.* But whether an official is

engaged in adjudication or rule-making, the fact that the official has taken a public position, or has expressed strong views, or holds an underlying philosophy with respect to an issue in dispute cannot alone overcome the presumption that the official will be objective. *United Steelworkers of America, etc. v. Marshall, supra; Hortonville Dst. v. Hortonville Ed. Asso.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). This does not mean that an official is free to express or act in any manner and still be allowed to participate in a proceeding. The type of proceeding the official is involved in necessarily influences the burden of proof as to whether he has a conflict of interest under the due process standard adopted by this court.

We defined adjudicatory and rule-making decisions in *Application of Union Carbide Corp., supra*, 308 N.W.2d at 757: "Administrative action is '"[A]judicatory in character if it is particular and immediate, rather than, as is the case of legislative or rule making action, general and future in effect...."' (quoting *Wood County Bank v. Camp*, 348 F.Supp. 1321, 1325 (D.D.C. 1972), vacated and remanded without opinion, 489 F.2d 1273 (D.C.Cir.1973))."

■ The test for disqualification in adjudicatory proceedings is whether an agency adjudicator has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it. *Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583 (D.C.Cir.1970). "The standard to be applied [for adjudicatory hearings] is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure." *Strain, supra*, 447 N.W.2d at 336.

■ We now hold in rule-making or legislative proceedings a different standard is applicable and the test is that the official should be disqualified only when there has been a clear and convincing showing the official has an unalterably closed mind on matters critical to the disposition of the

proceeding. *Association of Nat. Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151 (D.C.Cir. 1979).

■ In declaratory judgment actions, the scope of review of factual issues is the clearly erroneous standard; however, the appellate court is free and has an obligation to reach its legal conclusions independent from the conclusions reached by the trial court. *South Dakota Real Estate Com'n. v. Haggar, supra; State ex rel Spire v. Northwestern Bell*, 233 Neb. 262, 445 N.W.2d 284 (1989).

■ After a careful review of the record we cannot find the trial court erred in the findings of fact. Nor can we say the trial court erred in the conclusions of law which disqualified Stofferahn from hearing any pending cases involving deregulation, classification, or competitive status determination of telecommunication services where USWC was a party. Nor do we find the trial court in error in denying, as speculative, USWC's request to disqualify Stofferahn from any future cases when USWC would be a party and where deregulation, classification or competitive status determination of telecommunication was not in issue.

We do find the trial court erred as a matter of law by disqualifying Stofferahn in future cases involving deregulation, classification, or determination of competitive status of telecommunication services where USWC would be a party. The determination of future rights in a declaratory action is subject to the following general rule:

Accordingly, the courts will not render a declaratory judgment as to future rights, nor will they attempt to decide or declare the rights or status of parties upon a state of facts which is contingent or uncertain, unless the settlement of present rights entails the settlement of such future or contingent rights, or unless a present determination of future or contingent rights serves a particular need of the parties for guidance in their future conduct. ·

22A Am.Jur.2d *Declaratory Judgments* § 29 (1988). We adopted this rule in *Greene v. Wiese*, 75 S.D. 515, 519, 69

N.W.2d 325, 327 (1955): "A declaration will not be made in a matter where the interest of the plaintiff is merely contingent or in anticipation of an event that may never happen."

The trial court was correct in the factual findings relating to Stofferahn's unalterably closed mind, bias and prejudice and the judgment declaring that Stofferahn should be disqualified in cases pending at the time of the entry of the declaratory judgment. This does not mean, however, that Stofferahn cannot or will not adopt a different attitude at some time in the future. This very real possibility was specifically recognized and addressed in the trial court's memorandum opinion which was made part of the findings of fact and conclusions of law:

Although Commissioner Stofferahn argues he has put aside his prior views and can fairly judge USWC, he has never recanted his views on the competitive status of telecommunication services in this state, an issue critical to the disposition of future deregulation and classification proceedings. Furthermore, it is evident he continues to adhere to that view as he argues to this Court that his statements were justified by his good faith concern to attract public attention to "the dangers of the legislation."

This implies that had Stofferahn recanted or discontinued to adhere to his views, the declaratory relief granted by the trial court may have been different, and necessarily, if in the future Stofferahn possesses the impartiality presumed of an elected official, there should be no reason why he could not fairly judge matters involving USWC. That determination, however, should be for the trial court to decide at the appropriate time.

USWC argues that to compel it to attempt to disqualify Stofferahn in future cases will create an undue hardship and burden. Although we recognize that USWC may suffer a hardship as a result, we do not find such an increased burden sufficient to justify the forever condemnation of an elected public official from participating in any future adjudicatory or rule-making case where USWC may be a party without a proper due process show-

ing that he should be disqualified under the standards above set out. *Federal Election Commission v. National Ed. Ass'n.*, 457 F.Supp. 1102 (D.D.C.1978).

In summary, we affirm the judgment disqualifying Stofferahn from participating as a member of the PUC where the material facts, law or policy involved in the docket concerns the deregulation or classification of telecommunication services, or involves the determination of the competitive status of telecommunication services of pending dockets, and also affirm the denial of USWC's request that Stofferahn be disqualified in all future cases where USWC is a party.

The judgment declaring Stofferahn disqualified in all future dockets involving USWC where the material facts, law or policy involved in the docket involves the deregulation or classification of telecommunication services, or involves the determination of the competitive status of telecommunication services of future dockets is reversed.

MILLER, C.J., and MORGAN, HENDERSON and SABERS, JJ., concur.

TAPKEN, Circuit Judge, for WUEST, J., disqualified.