1997 SD 69

**Karl VOELTZ, Plaintiff and Appellant,**

v.

**JOHN MORRELL & CO., Defendant and Appellee.**

**Nos. 19805, 19828.**

Supreme Court of South Dakota.

Considered on Briefs May 1, 1997.

Decided June 11, 1997.

Robert L. O'Connor, Sioux Falls, for plaintiff and appellant.

David J. Vickers of Boyce, Murphy, McDowell and Greenfield, Sioux Falls, for defendant and appellee.

SABERS, Justice.

[¶ 1.] Workers' compensation claimant appeals circuit court's denial of motion for remand after he learned administrative law judge took employment with claimant's employer four days after issuing opinion adverse to claimant. We reverse.

### FACTS

[¶ 2.] This dispute arises from hearings conducted by the Department of Labor (Department) to determine whether John Morrell & Co. (Morrell) was obligated to continue payment of workers' compensation benefits to Karl Voeltz (Voeltz). The hearings were held November 11, 1993 and April 20, 1994. Administrative Law Judge (ALJ) Jean A. Koehler (Koehler) issued the Department's decision September 19, 1994 in favor of Morrell. The decision denied Voeltz 1) continued temporary total disability benefits; 2) permanent total disability benefits under the odd-lot doctrine; 3) medical expenses incurred after February 26, 1986; 4) permanent partial disability benefits; additionally, Department held that Voeltz must 5) repay tempo-

rary total benefits received from June 16, 1986 to August 9, 1986.

[¶ 3.] Voeltz appealed to the circuit court. When he learned that Koehler accepted employment with Morrell four days after issuing the decision, he filed a motion with the court to stay the appeal while he conducted discovery to determine whether the case should be remanded for new hearing because of a conflict of interest by Koehler.

[¶ 4.] Discovery showed that Koehler responded to a "blind" classified advertisement in the Sioux Falls Argus Leader by letter dated June 13, 1994. The advertisement recruited applicants for the position of "Director of Worker's Compensation" with an unnamed employer. She received a response dated July 22, 1994 from Gary Junso, vice-president of human resources with Morrell, inviting her to complete an application. In a letter dated August 26, 1994, Junso acknowledged receipt of the application and indicated an interview was the "next step." Arrangements for an interview were made via telephone between Koehler and Junso's office on September 2 and September 6. The interview was conducted at Morrell September 12, 1994.

[¶ 5.] During this same timeframe, Koehler applied for and accepted a position as staff attorney with the Public Utilities Commission (PUC). She gave notice of her resignation to the Department and set her last day at September 23, 1994, and her start date with the PUC at October 3, 1994. She informed Junso of her employment with the PUC and told him she would not accept employment with Morrell once she began the PUC job.

[¶ 6.] When Koehler gave notice to the Department, she had 15 or 20 cases pending upon which she intended to write decisions. The Voeltz case was on that list, and was apparently the only one which involved Morrell. Koehler telephoned Junso September 16, 1994 to inform him she had a Morrell case pending and that "I didn't want to discuss an offer, whether an offer would be made, whether they were considering one or whether I would accept one until that was wrapped up." However, she admits that during the same phone conversation, she "asked about benefits and a few other questions about the job." She did not inform Voeltz or his attorney of her negotiations for employment with Morrell.

[¶ 7.] Koehler issued her written decision in this case September 19, 1994. On September 21, she called Junso to tell him "that I was completely done with anything having to do with John Morrell." *Id.* On September 23, Junso called Koehler to offer her the job and she accepted. Koehler advised the PUC that same day that she was withdrawing her acceptance of employment. She went to work for Morrell October 17, 1994.

[¶ 8.] The circuit court held an evidentiary hearing on Voeltz' motion for remand and later denied the motion. The court dealt with the appeal of the workers' compensation case separately, affirming the Department's decision, with the exception of ordering Morrell to pay an additional $6,628.29 for Voeltz' medical expenses. Voeltz appeals both decisions. By notice of review, Morrell appeals the circuit court's modification of Department's decision. We reverse and remand on the disqualification issue for a new hearing by the Department.[1]

## STANDARD OF REVIEW

[¶ 9.] The facts in this case are essentially undisputed. This appeal concerns whether the circuit court applied the correct legal standard to these facts. "[Q]uestions requiring application of a legal standard are reviewed as are questions of law—de novo." *Phipps Bros. Inc. v. Nelson's Oil & Gas, Inc.,* 508 N.W.2d 885, 888 (S.D.1993) (citing *In re Hendrickson's Health Care Serv.,* 462 N.W.2d 655, 656 (S.D.1990); *In re Groseth Int'l,* 442 N.W.2d 229, 232 (S.D.1989) (Sabers, J., concurring in part and concurring specially in part); *South Dakota Stockgrowers Ass'n v. Holloway,* 438 N.W.2d 561, 563 (S.D. 1989)). We give no deference to the circuit court under this standard of review. *In re Sales & Use Tax Refund Request of Media*

---

1. Because of our decision on the disqualification issue, we do not reach the merits of Voeltz' workers' compensation claim or Morrell's notice of review.

*One, Inc.,* 1997 SD 17, ¶ 11, 559 N.W.2d 875, 878 (citation omitted).

**[¶ 10.] WHETHER EMPLOYMENT NEGOTIATIONS WITH A PARTY TO A PENDING CASE CONSTITUTE GROUNDS FOR DISQUALIFICATION OF AN ADMINISTRATIVE LAW JUDGE.**

■ [¶ 11.] "Administrative officials are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances." *Northwestern Bell Tel. Co., Inc. v. Stofferahn,* 461 N.W.2d 129, 133 (S.D.1990) (citations omitted). *In Stofferahn,* we reiterated the two bases upon which this presumption may be overcome and an agency adjudicator disqualified: When the record establishes either 1) actual bias on the part of the adjudicator, or 2) the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the proceeding. *Id.* (announcing a different standard when the agency official is involved in rule-making or legislative proceedings); *accord Riter v. Woonsocket Sch. Dist. No. 55–4,* 504 N.W.2d 572, 574 (S.D.1993); *Strain v. Rapid City Sch. Bd.,* 447 N.W.2d 332, 336 (S.D. 1989); *Schneider v. McLaughlin Indep. Sch. Dist. No. 21,* 90 S.D. 356, 364–65, 241 N.W.2d 574, 578 (1976).

■ [¶ 12.] The circuit court ignored the second basis for disqualification set out in *Stofferahn, Riter, Strain,* and *Schneider, supra,* and erred as a matter of law when it held that

> [the presumption of objectivity and impartiality] can only be overcome by proof of a due process violation. A due process violation must be shown by proof of actual bias, prejudice or interest. A showing of implied bias is not sufficient.

Additionally, Morrell misconstrues the holding in *Stofferahn;* Stofferahn was disqualified from a legislative, not an adjudicative proceeding. His challenger proved by clear and convincing evidence that Stofferahn should be disqualified from pending deregulation proceedings because he had "*an unalterably closed mind on matters critical to the disposition of the proceeding.*" 461 N.W.2d

at 133–34 (emphasis added). However, the court held that it was error to disqualify him from all like future proceedings because it was possible he could adopt a different attitude in the future. *Id.* at 134 (noting also that a declaratory judgment action is generally inappropriate for the determination of future rights). The emphasized language from *Stofferahn* is the correct test in a legislative or rule-making proceeding, but *not* an adjudicative proceeding. In an adjudicative proceeding, the test is whether there is actual bias or an unacceptable risk of actual bias. *Id.* at 133.

[¶ 13.] We find persuasive the language employed in *In re Bergen County Utilities Authority,* 230 N.J.Super. 411, 553 A.2d 849 (Ct.App.Div.1989). In that case, the court reversed and remanded a decision issued by the Board of Public Utilities (BPU) which, in three pages, rejected an ALJ's 40-page decision. While the ALJ's decision would have forced the Bergen County Utilities Authority (BCUA) to reduce its budget by $5.3 million, the BPU opinion ruled that the BCUA budget should be accepted as submitted. The court was disturbed by the cursory nature of the opinion, and on remand ordered Guido, one of the two authors of the opinion, disqualified from further participation. Guido previously held positions with the BCUA as a Commissioner for fifteen years and as Chairman for three years. Additionally, he was approached on two separate occasions while the BCUA opinion was pending to discuss a job as Executive Director with the BCUA.[2] Moreover, Guido's future employment with the BPU was not secure until *after* the opinion was issued. In discussing the impropriety of Guido's participation on remand the court stated:

> To disqualify a member of an administrative agency from performing an adjudicative function, it is unnecessary to show actual bias. Members must be able to perform the duties of office free of any interest, personal or pecuniary, having the potentiality of influencing their judgment.... It is the potential for conflict that disqualifies. There need be no show-

---

2. The persons who approached Guido did not have the power to appoint him Executive

Director.

ing that the official succumbed to temptation or was even aware of it.

Nothing before us indicates conscious impropriety on Guido's part. The circumstances, however, could reasonably be interpreted as having the likely capacity to tempt. If Guido had been employed by BCUA in 1987 he clearly would have been disqualified. *So too if Guido had ongoing negotiations for employment with BCUA.* ... [T]he job opportunity ... could reasonably be interpreted as having the likely capacity to tempt Guido to avoid a decision contrary to BCUA's interests.

*Id.* at 853 (emphasis added) (citations omitted); *cf. Pepsico, Inc. v. McMillen,* 764 F.2d 458, 461 (7th Cir.1985) (noting that "a judge cannot have a prospective financial relationship with one side yet persuade the other that he can judge fairly in the case"). In *Pepsico,* the Seventh Circuit Court of Appeals directed a federal district court judge to recuse himself when a person working on his behalf mistakenly contacted both law firms in a pending antitrust action to discuss employment of the judge after his retirement from the bench. The judge was not accused of impropriety, but the court noted that "all concerned were aware that it would be unethical for a law firm that had a case pending before a judge to be at the same time negotiating with him over possible future employment with the firm." 764 F.2d at 460.

[¶ 14.] Likewise, we do not need to decide that Koehler was actually biased, or require evidence of "conscious impropriety," to conclude that the job opportunity with Morrell could reasonably be perceived "as having the likely capacity to tempt [Koehler] to avoid a decision contrary to [Morrell's] interests," *BCUA,* 553 A.2d at 853, or that it presents an "unacceptable risk of actual bias." *Stofferahn,* 461 N.W.2d at 133; *Strain,* 447 N.W.2d at 336. Koehler should have recused herself upon receipt of the July 22, 1994 letter from Junso, as this was when she learned it was Morrell to which she applied. *Cf. Van Itallie v. Borough of Franklin Lakes,* 28 N.J. 258, 146 A.2d 111, 116 (1958) ("The question will

always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty.").

[¶15.] Voeltz argues that Koehler violated Rule 1.12(b) of the South Dakota Rules of Professional Conduct for attorneys, which provides, in relevant part:

A lawyer shall not negotiate for employment with any person who is involved as a party or as attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge *or other adjudicative officer,* or arbitrator.

SDCL ch. 16–18 app. (emphasis added). The comments accompanying this rule state that "adjudicative officer" includes a hearing officer. The circuit court held, and Morrell argues, that if proven, this violation can not be a basis for remand because the preamble to the Rules states they "are not designed to be a basis for civil liability." That is not the point; Voeltz does not seek relief against Koehler in a civil action. The fact this rule exists goes to the very heart of whether Koehler should have recused herself. The use of "shall not" in the Rule indicates it is "imperative" and defines "proper conduct for purposes of professional discipline." *See* preamble to *id.*

[¶ 16.] Koehler indicates unfamiliarity with the Rule: [3]

Q: And you have a license to practice law in South Dakota?

A: Yes.

Q: And you've studied ... South Dakota Rules of Professional Conduct[?]

A: I went to school in Colorado so I took the, it's a standardized test on ethics. Whether South Dakota is completely in line with that I don't know.

Nevertheless, her testimony demonstrates she recognized there was a problem with her conduct:

A: I just told them [Morrell] that I had that case and I
needed to get that wrapped up before there were any further conversations,

---

**3.** Regardless, all South Dakota attorneys are governed by the Rules. *In re Claggett,* 1996 SD 21,

¶ 10, 544 N.W.2d 878, 880.

whether it be with an offer or without. *I didn't want anybody then saying I was mad at them and did something wrong for that reason.*

(Emphasis added). Furthermore, Koehler testified she "understood" that she was bound by the Code of Judicial Conduct. While the Code may not apply,[4] her belief that she *was* bound should have prompted her to disqualify herself. *See* Code of Judicial Conduct, Canon 3E(1), SDCL ch. 16–2 app.:

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]

The comments to this section state:

> [I]f a judge were in the process of negotiating for employment with a law firm, the judge would be disqualified from any matters in which that law firm appeared, unless the disqualification was waived by the parties after disclosure by the judge.

[¶ 17.] In *Mordhorst v. Egert,* 88 S.D. 527, 223 N.W.2d 501 (1974), this court agreed with the United States Supreme Court that the law concerning disqualification because of a judge's potential interest in the outcome applies with equal force to administrative and judicial adjudications. *Id.* at 535, 223 N.W.2d at 505 (1974) (*citing Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), and noting the Court's concern with "whether in the usual course of events there was an indication of possible temptation for the average man sitting as a judge to be biased for or against any party in a case presented to him"); *see also Strain:*

> "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955). *This applies to administrative agencies which adjudicate as well [as] to courts. Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Not only is a biased decision maker constitutionally unacceptable, but "our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison, supra,* 349 U.S.

at 136, 75 S.Ct. at 625, 99 L.Ed. at 946. The standard to be applied is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Schneider v. McLaughlin Independent Sch. Dist.,* 90 S.D. 356, 241 N.W.2d 574 (S.D.1976).

447 N.W.2d at 336 (emphasis added); *accord Riter,* 504 N.W.2d at 574.

[¶ 18.] Koehler apparently believed forestalling an offer from Morrell was a sufficient, ethical course of action in this case. However, Voeltz was not even provided the opportunity to waive disqualification. This was clearly unfair. For all of these reasons, we reverse. It was not necessary for Voeltz to demonstrate an actual bias. A disqualification in an adjudicative proceeding only requires an "unacceptable risk of actual bias"—a risk clearly present when an ALJ is negotiating employment with a party to a pending case.

> The scales need to be tipped. The adjudicator should be under a duty to guarantee that he harbors no bias regarding the outcome of the case. It should be remembered "that the final refuge people have in all governmental procedures is that of due process, the eternal friend of justice and unrelenting foe of undue passion."

Circuit Court Judge Judith K. Meierhenry, *The Due Process Right to an Unbiased Adjudicator in Administrative Proceedings,* 36 SDLRev 551, 573 (1990–91) (footnote & citation omitted).

[¶ 19.] The order denying Voeltz' motion for remand for rehearing is reversed.

[¶ 20.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

4. The Code of Judicial Conduct does not expressly apply to ALJ's. See Code of Judicial Conduct, Canon 5E(A), SDCL ch. 16–2 app.