#26859, #26879-a-DG
**2014 S.D. 75**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF CONDITIONAL
USE PERMIT # 13-08,

DOUG HANSON and
LOUISE HANSON                                              Petitioners and Appellants,

v.

MINNEHAHA COUNTY
COMMISSION, MINNEHAHA
COUNTY, SOUTH DAKOTA,                                      Respondents and Appellees,


EASTERN FARMERS COOP,                                      Intervenors and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

RICK L. RAMSTAD of
Crew & Crew, PC
Sioux Falls, South Dakota                                  Attorneys for petitioners and
                                                           appellants.


SARA E. SHOW
KERSTEN A. KAPPMEYER of
Minnehaha County State's
 Attorney's Office
Sioux Falls, South Dakota                                  Attorneys for respondents and
                                                           appellees.

\* \* \* \*

ARGUED AUGUST 26, 2014
OPINION FILED **10/29/14**

JASON W. SHANKS
JOHN H. BILLION of
May & Johnson, PC
Sioux Falls, South Dakota

Attorneys for intervenors and
Appellees.

GILBERTSON, Chief Justice

[¶1.] Appellants Doug and Louise Hanson appeal from a de novo circuit court decision upholding the approval of a conditional use permit applied for by Eastern Farmers Cooperative. On appeal to this Court, the Hansons assert that the Minnehaha County Commission's decision to uphold the approval of the permit was arbitrary and capricious and that ex parte communications between a commissioner and Eastern Farmers Cooperative violated the Hansons' due process rights. We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶2.] Eastern Farmers Cooperative (EFC) applied for a conditional use permit to allow EFC to build and operate an agronomy facility on approximately 60 acres of land located a few miles north of Colton, South Dakota. The proposed facility would store, distribute, and sell a variety of farm products, including anhydrous ammonia. The subject land, as well as the neighboring land at issue in this case, is zoned A-1 Agricultural.

[¶3.] The Minnehaha Planning Commission scheduled a hearing to review EFC's application. In preparation for the meeting, the Minnehaha County Planning Director reviewed the application and visited the proposed site. He observed the layout of the land and the proximity of homes and businesses to the proposed site, including three farmsteads located within a half-mile of the site. The Planning Director recommended approving the permit with ten conditions.

[¶4.] At the Planning Commission hearing, the Hansons and other area residents appeared in order to oppose the conditional use permit. They voiced

concerns about the dangers of chemical storage in close proximity to their residences. The Hansons' residence, located within the A-1 Agricultural zone, is directly across a county road from the proposed facility. At the conclusion of the hearing, the Planning Commission voted unanimously to approve the permit, subject to the ten stated conditions. The Hansons appealed the decision of the Planning Commission to the Minnehaha County Commission.

[¶5.] Prior to the appeal hearing, County Commissioner Dick Kelly called the agronomy facility near Worthing, South Dakota, and requested a tour. During the tour, which lasted about an hour, Commissioner Kelly viewed the interior and exterior of the facility and received information on some of its safety features. Although the Planning Director informed Commissioner Kelly that EFC owned the Worthing facility, it is disputed whether Commissioner Kelly knew who operated the plant at the time he arranged the tour.

[¶6.] The County Commission held a hearing on the appeal. Four members of the County Commission were present, including Commissioner Kelly. One commissioner was absent. At the appeal hearing, the Hansons and their attorneys presented testimony and other evidence in opposition to the facility, including plume analyses simulating an anhydrous ammonia spill. Other opponents of the permit voiced their concerns about traffic and other safety and aesthetic concerns. During the appeal hearing, Commissioner Kelly disclosed that he had toured the Worthing facility and was impressed by the safety measures in place. Attorneys and witnesses for EFC presented testimony about federal and state regulations regarding storage of chemicals, evidence about EFC's safety record, and safety

features at other facilities. They also presented other information, including the plant's potential economic impact on the area. They presented surveys—also given to neighbors—of EFC's other facilities that described the extent of noise, dust, traffic, and other conditions surrounding those facilities. At the conclusion of the hearing, the commissioners present voted unanimously in favor of upholding the Planning Commission's decision to grant the permit to EFC.

[¶7.] Pursuant to SDCL 7-8-30, the Hansons sought de novo review of the decision before the circuit court. The circuit court held a trial and heard evidence from many of the same witnesses—including testimony from Commissioner Kelly and the other commissioners about the impact Commissioner Kelly's tour had on their decision. The circuit court held that the Comprehensive Plan satisfied the requirements of SDCL 11-2-17.3. The circuit court also found that Commissioner Kelly's tour of the Worthing Facility constituted ex parte communication that disqualified his vote. However, the circuit court found no evidence of influence in the other three votes and, therefore, left the decision intact, holding that the Hansons remained in the same position that they would have been in had Commissioner Kelly not voted.

## STANDARD OF REVIEW

[¶8.] This Court reviews questions of law de novo, including the question of whether the county ordinances at issue satisfy the statutory requirements of SDCL 11-2-17.3. *See Smith v. Tripp Cnty.*, 2009 S.D. 26, ¶ 10, 765 N.W.2d 242, 246 ("The interpretation of statutes and the application of statutes to given facts is a question of law (or a mixed question of law and fact) that we review *de novo*."). We review

any factual findings of the circuit court for clear error. *State v. Rolfe*, 2014 S.D. 47, ¶ 14, 851 N.W.2d 897, 902.

## ANALYSIS AND DECISION

[¶9.]    The Hansons essentially claim the Planning and County Commissions violated their right to due process of law in two ways.  First, the Hansons allege the Minnehaha County Zoning Ordinances (MCZO) do not provide adequate criteria upon which to base a decision to grant a conditional use permit in this case.  Therefore, they argue, the Planning Commission's decision to grant EFC a conditional use permit was arbitrary and capricious and constitutes a violation of the Hansons' constitutional right to due process of law.  Second, the Hansons allege Commissioner Kelly conducted an ex parte investigation prior to the Hansons appearing before the County Commission.  The Hansons argue that Commissioner Kelly's subsequent participation in their appeal to the County Commission denied them a fair and impartial hearing, violating the Hansons' right to due process.  We disagree.

[¶10.]    *1.    Whether the Planning Commission's grant of a conditional use permit to EFC violated the Hansons' right to due process.*

[¶11.]    "Although it is axiomatic that private property cannot be taken without due process of law, this limitation does not shield private property from regulations, such as zoning, which are implemented under the police power." *Schafer v. Deuel Cnty. Bd. of Comm'rs,* 2006 S.D. 106, ¶ 11, 725 N.W.2d 241, 245. Accordingly, the South Dakota Legislature empowered individual counties to not only enact their own zoning ordinances, but also to permit conditional uses of real

property that might otherwise be contrary to those zoning ordinances. The Legislature, however, required that such zoning ordinances contain evaluation criteria for each conditional use.

> A county zoning ordinance adopted pursuant to this chapter that authorizes a conditional use of real property shall specify the approving authority, each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, and the criteria for evaluating each conditional use. The approving authority shall consider the stated criteria, the objectives of the comprehensive plan, and the purpose of the zoning ordinance and its relevant zoning districts when making a decision to approve or disapprove a conditional use request.

SDCL 11-2-17.3.

[¶12.] The conditional uses at issue in this case are "[a]griculturally related operations involving the handling, storage and shipping of farm products[,]" MCZO art. 3.04(X), and "[f]acilities for the storage and distribution of anhydrous ammonia[,]" MCZO art. 3.04(BB). These conditional uses, as well as others listed in MCZO art. 3.04, must be "obtained in conformance with the requirements of Article 19.00." MCZO art. 3.04. Article 19.01 of the MCZO, in turn, requires the Planning Commission to "impose such conditions as are appropriate and necessary to insure compliance with the Comprehensive Plan and to protect the health, safety, and general welfare in the issuance of such conditional use permit." Thus, protecting the health, safety, and general welfare are the first three general criteria upon which the Planning Commission must evaluate any petition for conditional use. Additionally, specific to agriculture-related businesses, the incorporated Comprehensive Plan outlines "Land Use Location and Design Criteria" for the

Planning Commission to evaluate conditional uses. Those criteria require consideration of:

- Adjacent to county and state highways.
- Rail access for industrial uses.
- Controlled access onto major roadways.
- Adequate buffering from neighboring uses.
- Convenient siting of commercial uses for customers.
- Hard surfaced driveways and parking areas.

Therefore, the county ordinances delineate at least three criteria applicable to evaluating every conditional use application and six additional criteria—incorporated by reference from the Comprehensive Plan—for the Planning Commission to evaluate the conditional use applied for in this case.

[¶13.]     Even if the MCZO did not provide nine criteria applicable to this conditional use, however, the Hansons' constitutional argument still fails at an even more fundamental level. We have previously said, "It is well settled that a zoning law is afforded a presumption of constitutionality[.]" *City of Brookings v. Winker*, 1996 S.D. 129, ¶ 4, 554 N.W.2d 827, 828. Municipal zoning ordinances are afforded this same presumption of constitutional validity. *Parris v. City of Rapid City*, 2013 S.D. 51, ¶ 17, 834 N.W.2d 850, 855 (citing *Winker*, 1996 S.D. 129, ¶ 4, 554 N.W.2d at 829). To overcome this presumption, the challenging party "must show facts supporting the claim the ordinance is arbitrary, capricious, and unconstitutional." *Winker*, 1996 S.D. 129, ¶ 4, 554 N.W.2d at 829 (citing *Fortier v. City of Spearfish,* 433 N.W.2d 228, 231 (S.D. 1988)). "Abstract considerations" are not sufficient to demonstrate arbitrariness. *Id.* Rather, as both this Court and the United States Supreme Court have held, an ordinance is arbitrary and unconstitutional when it has "no substantial relation to the public health, safety, morals, or general welfare."

*Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S. Ct. 114, 121, 71 L. Ed. 303 (1926), *quoted in City of Eastlake v. Forest City Enters.*, 426 U.S. 668, 676, 96 S. Ct. 2358, 2363, 49 L. Ed. 2d 132 (1976); *Schafer*, 2006 S.D. 106, ¶ 12, 725 N.W.2d at 246 (quoting *City of Eastlake*, 426 U.S. at 676, 96 S. Ct. at 2363). In effect, then, the Hansons ask us to decide whether an ordinance—requiring the Planning Commission to protect the health, safety, and general welfare of the public—is substantially related to protecting the health, safety, and general welfare of the public. The question hardly survives its asking.

[¶14.] Further, the Hansons "fail[] to provide legal authority to support [their] contention that [MCZO arts. 3.04 and 19.01 are] inherently arbitrary." *Cf. Parris*, 2013 S.D. 51, ¶ 18, 834 N.W.2d at 855. They do direct our attention to *In re Conditional Use Permit Denied to Meier*, 2000 S.D. 80, 613 N.W.2d 523, and state that this Court "wrote approvingly" of the more specific criteria used in that case. The criteria set forth in *Meier* provided a "fixed rule or standard," *see Smith v. Canton Sch. Dist. No. 41-1*, 1999 S.D. 111, ¶ 9, 599 N.W.2d 637, 639-40, and would have satisfied an obligation under SDCL 11-2-17.3 to "specify . . . criteria for evaluating each conditional use." However, the "specific standards" used in *Meier* were guided by a stricter law that has since been repealed. Prior to 2004, SDCL 11-2-17.2 required counties to establish "standards and criteria" that were to include "requirements specific to each use." SDCL 11-2-17.2 (2003) (repealed by 2004 S.D. Sess. Laws ch. 101, § 8). In contrast, SDCL 11-2-17.3 requires only "criteria for evaluating each conditional use." Thus, even if we held that stricter standards were preferable, we cannot conclude that they are constitutionally or statutorily required.

[¶15.]        The Hansons' reliance on this Court's decision in *Kirschenman v. Hutchinson County Board of Commissioners*, 2003 S.D. 4, 656 N.W.2d 330, *overruled by Bechen v. Moody Cnty. Bd. of Comm'rs*, 2005 S.D. 93, 703 N.W.2d 662, is equally misplaced.  In *Kirschenman*, we did not review the constitutionality of a zoning ordinance.  Instead, we were faced with determining whether Hutchinson County's Board of Commissioners acted in a legislative or an administrative capacity in granting a conditional use permit for a hog confinement facility.  We applied a "liberal rule of construction to permit citizens to exercise their powers of referendum."  *Id.* ¶ 7, 656 N.W.2d at 333.  Because the ordinance's complete lack of standards or conditions meant it was only "an open-ended statement that the Board is allowed to grant or deny a use permit[,]" we concluded that the Board's approval of the conditional use was a legislative action subject to referendum.  *Id.* ¶ 9, 656 N.W.2d at 334.  Thus, our commentary in *Kirschenman* related only to the sufficiency of conditional use standards in the context of whether or not the approval of a conditional use was subject to referendum and had nothing to do with whether the conditional use ordinance provided an adequate basis for the Board to constitutionally approve a conditional use.[1]  Even if *Kirschenman* could be read as the Hansons suggest, it was also decided prior to 2004 and would be susceptible to the same criticism as the Hansons' reliance on *Meier*, above.

---

1.    The implication of *Kirschenman* and our decision in the present case is that a conditional use could conceivably be simultaneously quasi-judicial for purposes of determining its constitutionality and quasi-legislative for purposes of being subject to referendum.  We do not decide here whether the general criteria of MCZO art. 19.01 are sufficient to immunize that ordinance from referendum.

[¶16.] We therefore conclude that the Planning Commission's reliance on the criteria stated in MCZO arts. 3.04 and 19.01, in granting EFC's conditional use request, was not arbitrary and capricious and did not violate the Hansons' right to due process.

[¶17.] *2. Whether Commissioner Kelly's participation in the County Commission's review of the Planning Commission's approval of the conditional use permit violated the Hansons' right to due process.*

[¶18.] The Hansons argue that Commissioner Kelly's participation in the appeal to the County Commission deprived them of due process. The Hansons contend that the circuit court was correct in determining that Commissioner Kelly should have recused himself from the proceedings because he appeared to be predisposed to the outcome.[2] However, the Hansons claim that the circuit court erred in its determination that invalidating Commissioner Kelly's vote—but otherwise letting the decision of the County Commission stand—was a sufficient remedy. We do not address whether Commissioner Kelly's actions should have disqualified him from participating because we affirm, regardless.

[¶19.] A "fair trial in a fair tribunal is a basic requirement of due process which is applicable to administrative agencies." *Nw. Bell Tel. Co. v. Stofferahn*, 461 N.W.2d 129, 132 (S.D. 1990) (citing *Strain v. Rapid City Sch. Bd.*, 447 N.W.2d 332, 336 (S.D. 1989)). The test for disqualifying an administrative official is different for quasi-legislative and quasi-judicial administrative actions. *See id.* at 133-34. We have stated that "a local zoning board's decision to grant or deny a conditional use

---

2. The Appellees and Intervenors assert by way of notice of review that Commissioner Kelly's vote should not have been disqualified.

permit is quasi-judicial and subject to due process constraints." *Armstrong v. Turner Cnty. Bd. of Adjustment*, 2009 S.D. 81, ¶ 19, 772 N.W.2d 643, 650-51. *See also Stofferahn*, 461 N.W.2d at 133 (internal quotation marks omitted) ("Administrative action is [a]djudicatory in character if it is particular and immediate, rather than, as is the case of legislative or rule making action, general and future in effect."). Thus, "the test we have applied in determining whether an applicant received a fair and impartial hearing is whether there was actual bias or an unacceptable risk of actual bias." *Hanig v. City of Winner*, 2005 S.D. 10, ¶ 11, 692 N.W.2d 202, 206. "If the circumstances show a likely capacity to tempt the official to depart from his duty, then the risk of actual bias is unacceptable and the conflict of interest is sufficient to disqualify the official." *Id.* ¶ 15, 692 N.W.2d at 207. "When a due process violation exists because of a board member's disqualifying interest, the remedy is to 'place the complainant in the same position had the lack of due process not occurred.'" *Armstrong,* 2009 S.D. 81, ¶ 32, 772 N.W.2d at 654 (quoting *Hanig*, 2005 S.D. 10, ¶ 22, 692 N.W.2d at 210).

[¶20.]     Primarily relying on *Armstrong*, the Hansons argue that the only way to restore them to "the same position" is to grant them a new hearing and to "begin anew." The Hansons misinterpret the significance of *Armstrong*. In *Armstrong*, the Turner County Board of Adjustment granted an elevator cooperative a conditional use permit to construct a commercial grain storage facility. *Id.* ¶ 7, 772 N.W.2d at 646-47. A member of the Board of Adjustment, Van Hove, was also a county commissioner. In his role as county commissioner, Van Hove had previously become "deeply involved" in a conflict between the elevator and local residents

opposing the conditional use permit. *Id.* ¶ 31, 772 N.W.2d at 654. Out of concern that a building permit erroneously granted by the county would lead to liability for the county, Commissioner Van Hove attempted to get the parties to negotiate. *Id.* This interest and ex parte communication was not disclosed until after the hearing on the conditional use permit. *Id.* On appeal, this Court concluded that Commissioner Van Hove's position as the only county commissioner on the Board of Adjustment carried weight with the other board members. *Id.* ¶ 32, 772 N.W.2d at 654. We vacated the permit, granted a new hearing, and disqualified Commissioner Van Hove. *Id.*

[¶21.] *Armstrong* in no way suggests that every disqualification of an official should result in a new hearing. Rather, *Armstrong* held that a board member's *conflicting* interest—a subset of all the reasons for disqualification—is sufficient to raise an unacceptable risk of bias requiring a new hearing. However, disqualification for a reason other than having a conflict of interest is not necessarily sufficient to warrant a new hearing. "If an official reflects subjective partiality, this does not mean a proceeding conducted in good faith is necessarily invalidated." *Stofferahn*, 461 N.W.2d at 133 (citing *Lead Indus. Ass'n v. EPA*, 647 F.2d 1130 (D.C. Cir. 1980)). To assert otherwise expands the holding of *Armstrong* well beyond its intended limits. In the present case, the Hansons' due process claim is not based on any assertion that Commissioner Kelly had a conflicting interest that would prevent him from objectively hearing their appeal. Instead, their claim is premised on the conclusion that Commissioner Kelly's pre-hearing investigation and ex parte communication with EFC created a bias in his own mind that was

potentially spread to the rest of the County Commission. Because there is no assertion of a conflict of interest—i.e., a personal interest in the outcome—let alone evidence of one, *Armstrong* does not require us to automatically order a new hearing in this case. Rather, we must examine the apparent effect Commissioner Kelly had on the remaining three members of the County Commission.

[¶22.] In support of their requested remedy, the Hansons argue that "it can be readily inferred that [Commissioner] Kelly's opinions regarding the supposed safety of the Worthing plant influenced the votes of other commissioners" and that "[b]ecause of [Commissioner] Kelly's intended influence on the other votes, the entirety of the vote is suspect and the conditional use permit should be vacated." However, "[a]dministrative officials are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances." *Stofferahn*, 461 N.W.2d at 133 (citing *United States v. Morgan*, 313 U.S. 409, 421, 61 S. Ct. 999, 1004, 85 L. Ed. 1429 (1941)). This presumption of objectiveness bars the Hansons' inference that the other commissioners were necessarily influenced. In determining whether the other commissioners should have also been disqualified, Commissioner Kelly's *intent* to influence—if there was one—is relevant only to the extent that it actually manifested and either created real bias or an unacceptable risk of bias. Even assuming that Commissioner Kelly's vote should be disqualified, a majority of the County Commission still voted to uphold the Planning Commission's decision. Thus, the Hansons must actually show that either Commissioner Kelly's actions were sufficient to taint the entire proceeding or that one or more of the remaining commissioners should also be disqualified individually.

[¶23.]    The Hansons have not met their burden.  We give deference to the circuit court's factual finding that there was no evidence that the other commissioners relied on, or even considered, Commissioner Kelly's statements when casting their votes.[3]  For their part, the Hansons do not point to any specific "opinions" Commissioner Kelly shared before the County Commission that were not directly addressed by witness testimony at the hearing.  Instead, most of the evidence against allowing Commissioner Kelly's participation in the appeal cites his statements at the circuit court stage, where he explained the potential effect the tour had on *his* decision to vote in favor of the application.  Commissioner Kelly did comment at the County Commission meeting that he had toured the Worthing facility and was "impressed with" the safety measures in place at Worthing and also stated that he thought the chance of a spill was getting "less and less" from what he observed at the facility.  However, witnesses for EFC presented information on the

---

3.    Deference aside, we see nothing in the transcript of the appeal before the County Commission to suggest that Commissioners Barth or Pekas, or Chairman Beninga, were influenced by Commissioner Kelly's comments. Commissioner Barth clearly supported the conditional use prior to Commissioner Kelly's tour of the Worthing plant, as Commissioner Barth first voted to approve the conditional use while sitting on the Planning Commission.  During the appeal to the County Commission, Commissioner Barth noted the danger inherent to anhydrous ammonia, but recognized the need to locate the facility in reasonable proximity to supporting infrastructure.  Regarding EFC's proposed site, Commissioner Barth asked, "If not there, then where?" Commissioner Pekas, although stating a serious concern for the children located in the area, seemed to echo Commissioner Barth's view.  Chairman Beninga's vote in favor of the conditional use likewise appears to have been primarily motivated by the potential for economic development.  His statements on the record evince a confidence that the concerns expressed by the opponents of the conditional use would largely be mitigated by the ten stipulations that the Planning Commission attached to the conditional use permit.

specific safety standards and equipment used at EFC facilities, inspections, frequency of spills and accidents, and descriptions of the Worthing facility with comments from its neighbors. The other commissioners were able to weigh this information on their own, and the Hansons had an opportunity to offer counter-evidence.

[¶24.]       After reviewing the transcript of the hearing, we conclude that the circuit court did not clearly err in finding that all of Commissioner Kelly's statements were otherwise supported by evidence in the record and testimony presented at the hearing, or that the other commissioners were not influenced by Commissioner Kelly's actions. Because the County Commission was comprised only of other county commissioners—colleagues of equal station to Commissioner Kelly—there is no unacceptable risk that his opinion carried disproportionate weight, as was our concern regarding Commissioner Van Hove in *Armstrong*. 2009 S.D. 81, ¶ 32, 772 N.W.2d at 654. In the absence of Commissioner Kelly's vote, the County Commission's decision still commands a majority of that body. Even if Commissioner Kelly formed some bias against the Hansons as a result of his pre-appeal activities, he did not have a conflicting interest in the outcome of the proceeding. Therefore, we conclude that Commissioner Kelly's opinions did not affect the outcome of the proceeding, and we agree with the circuit court that invalidating Commissioner Kelly's vote placed the Hansons in the same position they would have been in had Commissioner Kelly not participated in the hearing.

[¶25.]       The Hansons also argue that without Commissioner Kelly's vote, the remaining three votes fail to carry the two-thirds majority vote required by SDCL

11-2-59. The Hansons' reliance on this statute is misplaced. SDCL 11-2-59

provides:

> The concurring vote of two-thirds of the members of the board of adjustment is necessary to reverse any order, requirement, decision, or determination of any such administrative official, or to decide in favor of the applicant on any matter upon which it is required to pass under any such ordinance, or to effect any variation in the ordinance.

First, this statute applies to "the board of adjustment[.]" The vote challenged by the

Hansons was not taken by a board of adjustment, but rather by the County

Commission. The Appellees correctly note that SDCL 11-2-60 may apply when a

board of county commissioners is exercising the powers of a board of adjustment[4]—

but that factual scenario is not present in this case. Although boards of adjustment

are generally given the power to grant variances, South Dakota law does not

require board of adjustment action to approve conditional use permits.[5] *See* SDCL

11-2-53 (granting a board of adjustment power to hear and decide appeals and

---

4.      SDCL 11-2-60 provides:
>       In lieu of appointing the board of adjustment provided by § 11-2-49, the board of county commissioners having adopted and in effect a zoning ordinance may act as and perform all the duties and exercise the powers of the board of adjustment. The chair of the board of county commissioners is chair of the board of adjustment as so composed. The concurring vote of at least two-thirds of the members of the board as so composed is necessary to reverse any order, requirement, decision, or determination of any administrative official, or to decide in favor of the appellant on any matter upon which it is required to pass under any zoning ordinance, or to effect any variation in the ordinance.

5.      "In 2004, the Legislature removed the provision in the law that gave a county board of adjustment the authority to approve conditional use permits. In its place, the Legislature passed a new law giving the power to the county to designate the entity responsible for approving conditional use permits." *Armstrong*, 2009 S.D. 81, ¶ 10, 772 N.W.2d at 647.

authorize variances); SDCL 11-2-17.3 (requiring county ordinances to "specify the approving authority" for conditional uses). The Hansons fail to point to authority designating the act of upholding the approval of a conditional use permit as a power unique to a board of adjustment. Because the challenged vote was taken by the County Commission, and the County Commission was not exercising the powers of a board of adjustment, SDCL 11-2-59 and SDCL 11-2-60 do not apply. *See also Goos RV Ctr. v. Minnehaha Cnty. Comm'n*, 2009 S.D. 24, ¶¶ 18-21, 764 N.W.2d 704, 710-11.

[¶26.] Moreover, even if the County Commission were acting as a board of adjustment in this case, a two-thirds majority vote is only required to "*reverse* any order, requirement, decision, or determination of any administrative official, or to decide *in favor of* the appellant[.]" SDCL 11-2-60 (emphasis added). Here, the County Commission was *upholding* a decision of the Planning Committee and deciding *against* the Hansons, the appellants. The action therefore did not require a two-thirds majority. For these reasons, the circuit court did not err when it held that only the simple majority vote of the County Commission was needed to uphold the Planning Commission's decision. *See* SDCL 7-8-18.

**CONCLUSION**

[¶27.] We conclude that the Minnehaha County Zoning Ordinances set forth criteria for evaluating the conditional use application in this case such that the Planning Commission's reliance on those standards did not produce an arbitrary and capricious decision in violation of the Hansons' due process rights. Furthermore, we conclude that invalidating Commissioner Kelly's vote was a

sufficient remedy to cure any alleged due process concerns arising out of his

participation in the County Commission's action.  We therefore affirm.

[¶28.]        KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.