2002 SD 45

**Duane VITEK, Michael Neth, Sandy Neth, Steven Neth, and Sharon Neth, Petitioners and Appellants,**

v.

**BON HOMME COUNTY BOARD OF COMMISSIONERS, Eugene Kokesh, Allen Sternhagen, John Fathke, John Pesek, Russell Jelsma, and Linda Pesek, Bon Homme County Auditor, Respondents and Appellees.**

No. 22124.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided April 24, 2002.

**232**

James G. Abourezk, Abourezk Law Offices, P.C., Sioux Falls, South Dakota, Attorney for petitioners and appellants.

Lisa Z. Rothschadl, Bon Homme County State's Attorney, Tyndall, South Dakota, Attorneys for respondents and appellees.

SABERS, Justice.

[¶ 1.] Duane Vitek, Michael Neth, Sandy Neth, Steven Neth and Sharon Neth (Vitek) applied for a writ of mandamus to compel the Bon Homme County Board of Commissioners (County) to submit to a vote of the qualified electors of the county a referendum regarding a variance granted by County for the construction and operation of a hog confinement facility. The First Circuit Court denied a writ of mandamus and we reverse and remand.

## FACTS

[¶ 2.] On April 26, 2001, the Bon Homme County Board of Adjustment (Board) granted a variance to Leo and Linda Pederson (Pederson), allowing them to construct a hog confinement facility in Bon Homme County. The state's attorney for Bon Homme County prepared findings of fact and conclusions of law which Board adopted on May 25. On June 28, County held a hearing regarding Board's decision to grant the variance. County affirmed the decision and adopted Board's findings of fact and conclusions of law, which were later published on July 25. On July 27, Vitek filed a direct appeal to the First Judicial Circuit.

[¶ 3.] On August 13, 723 citizens of Bon Homme County signed petitions with the county auditor seeking a referendum vote.

On August 21, County voted unanimously to reject the petitions. County stated its action of granting the variance was a quasi-judicial administrative decision and thereby not subject to the referendum process set forth in SDCL 7–18A–15.1.

[¶ 4.] On August 29, Vitek filed an application for writ of mandamus with the First Judicial Circuit. Vitek sought to compel County to submit its decision regarding the variance to a vote. The circuit court denied the writ on September 7, because Vitek had an adequate remedy at law in the form of a direct appeal to a circuit court under SDCL 7–8–27. The circuit court further stated that the appeal constituted Vitek's exclusive remedy under SDCL 7–8–32.

### STANDARD OF REVIEW

[¶ 5.] The grant or denial of a writ of mandamus is discretionary. *Baker v. Atkinson*, 2001 SD 49, ¶ 12, 625 N.W.2d 265, 269–70; *Willoughby v. Grim*, 1998 SD 68, ¶ 6, 581 N.W.2d 165, 167 (citations omitted). Therefore, a denial of a writ of mandamus is reviewed under an abuse of discretion standard. *Id.* "[A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Almond*, 511 N.W.2d 572, 574 (S.D.1994) (citations omitted). "We do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could

have reached a similar decision." *Id.* (citations omitted).

### [¶ 6.] WHETHER THE CIRCUIT COURT ERRED IN DETERMINING THAT THE EXCLUSIVE REMEDIES PROVIDED FOR IN SDCL 7–8–27 AND 7–8–32 PRECLUDE THE ISSUANCE OF A WRIT OF MANDAMUS TO REQUIRE A REFERENDUM.

[¶ 7.] County granted a zoning variance to Pederson for the construction and operation of a 3,300–head hog confinement facility. Neither the zoning ordinance under which this variance was granted nor the variance provision itself were included in either the record or Vitek's brief. Whether County's act of granting the variance is legislative or administrative in character presents a close question. SDCL 7–18A–15.1 provides that "[a ]ny legislative decision of a board of county commissioners is subject to the referendum process." (emphasis added). In addition, "[i]n applying the 'legislative' versus 'administrative' distinction[,] this Court will apply a liberal rule of construction permitting rather than preventing, citizens from exercising their powers of referendum." *Wang v. Patterson*, 469 N.W.2d 577, 580 (S.D.1991). It would appear that a variance of this nature is substantial and would be legislative and therefore subject to referendum, but we are unable to discern whether this is true because of an incomplete record.*

* SDCL 7–18A–15.1 provides that "[a]ny legislative decision of a board of county commissioners is subject to the referendum process." The statute further provides "[n]o administrative decision of a governing body is subject to the referendum process, unless specifically authorized by this code." Under SDCL 9–20–19 an administrative decision is defined as "one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature." A legislative decision is defined as "one that enacts a permanent

law or lays down a rule of conduct or course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision." *See also Taylor Properties, Inc. v. Union County*, 1998 SD 90, 583 N.W.2d 638 (distinguishing between administrative and legislative actions); *Wang*, 469 N.W.2d 577 (same).

If, in fact, County granted a variance neither permitted nor contemplated under the county's zoning law, the grant of the variance would be legislative and not adminis-

[¶ 8.] Vitek seeks issuance of a writ of mandamus to compel County to submit its zoning decision to the referendum process. "To prevail in seeking a writ of mandamus, [a] petitioner must have a clear legal right to performance of the specific duty sought to be compelled and the respondent must have a definite legal obligation to perform that duty." *Willoughby*, 1998 SD 68 at ¶ 7, 581 N.W.2d at 168 (citing *SD Trucking Ass'n, Inc. v. SD Dep't of Transp.*, 305 N.W.2d 682, 684 (SD 1981)). Mandamus is a remedy granted under exceptional circumstances:

[T]o compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.

SDCL 21–29–1. *See also Baker*, 2001 SD 49 at ¶ 16, 625 N.W.2d at 271 (stating mandamus is "an extraordinary remedy that will issue only when the duty to act is clear"). A court may issue a writ of mandamus only "where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." SDCL 21–29–2.

[¶ 9.] To prevail, Vitek must show he has a clear legal right to submit County's decision to the referendum process, and that County must have a definite legal obligation to submit its decision to the referendum process. County asserts and the circuit court agreed, however, that the exclusive remedy provision of SDCL 7–8–32 precludes issuance of a writ of mandamus. While the direct appeal provided for in this statute represents the exclusive statutory remedy, it trumps neither the South Dakota Constitution nor the statutes that implement it.

[¶ 10.] South Dakota, through its Constitution, "has reserved the referendum power to the people." *Taylor Properties, Inc.*, 1998 SD 90 at ¶ 24, 583 N.W.2d at 643 (citing S.D. Const. Art. III § 1). Article III § 1 provides, in pertinent part, that:

[T]he people expressly reserve to themselves the right to propose measures, which shall be submitted to a vote of the electors of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect[.]

This Court has noted that "[t]his sacred right is also specifically extended to the issue of county comprehensive plans and adjuncts thereto by SDCL 11–2–22." *Taylor Properties, Inc.*, 1998 SD 90 at ¶ 24, 583 N.W.2d at 643. This Court has further noted that:

A referendum ... is far more than an expression of ambiguously founded neighborhood preference. It is the city itself legislating through its voters—an exercise by the voters of their traditional right through direct legislation to override the view of their elected representatives as to what serves the public interest.

*Id.* (quoting *Spaulding v. Blair*, 403 F.2d 862 (4th Cir.1968)).

[¶ 11.] Furthermore, SDCL 9–20–18 provides in part:

The Legislature finds that in making past grants of decision-making authority to municipal governing authorities, its intent was to grant that authority to the

---

trative. The act of granting such a variance could constitute laying down a new rule of conduct or course of policy and would

therefore be legislative, contrary to current law and subject to referendum.

governing bodies of municipalities and that such actions, unless otherwise excluded from the referendum and initiative process by other state law, are subject to the initiative and referendum process.

*See also Wang,* 469 N.W.2d at 578. SDCL 7–18A–16 provides that the filing of a petition to refer an ordinance to referendum requires a county to submit its decision to a vote of the county.

 [¶ 12.] The South Dakota Constitution and statutes that implement it may provide Vitek with a clear legal right to have County submit its zoning decision to the referendum process. The first inquiry for the circuit court should have been whether Vitek established this clear legal right. However, the circuit court failed to give proper consideration to determining whether County's zoning decision was subject to referendum. It instead undertook a discussion of whether the exclusive remedy provision of SDCL 7–8–32 precluded issuance of a writ of mandamus. The circuit court's decision on whether Vitek had a clear legal right to referendum should have been made without reference to the exclusive remedy provision.

[¶ 13.] From the state of this record, we cannot determine whether the circuit court was overly influenced by the exclusive remedy provision of SDCL 7–8–32 or if it failed to make a detailed ruling on the legislative versus administrative portion of the analysis. Therefore, we reverse and remand for redetermination.

[¶ 14.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 15.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.