2003 SD 4

**Ron KIRSCHENMAN and Larry Stern, Petitioners and Appellants,**

v.

**HUTCHINSON COUNTY BOARD OF COMMISSIONERS, Gillas Stern and Russell Leonard, and Jerome Hoff, County Auditor, Respondents and Appellees.**

No. 22520.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 2002.

Decided Jan. 8, 2003.

Rehearing Denied Feb. 13, 2003.

James G. Abourezk, Sioux Falls, South Dakota, Attorneys for petitioners and appellants.

Glenn L. Roth, Hutchinson County State's Attorney, Olivet, South Dakota, Attorneys for respondents and appellees.

SABERS, Justice.

## FACTS

[¶ 1.] The Hutchinson County Board of Commissioners (Board) granted David Meyer a conditional use permit following a public hearing on April 16, and the Board's vote on May 2, 2002. The use permit allowed Meyer to construct and operate a 3,200–head hog confinement facility within Hutchinson County. A group of Hutchinson County citizens (Kirschenman) filed petitions with the Hutchinson County Auditor calling for a referendum vote on the issue. The Board voted to reject the petitions and the County Auditor concurred in the decision. The basis for rejecting the petitions was the Board's determination that the decision to grant the permit was administrative, not legislative under SDCL 7–18A–15.1, and therefore not referable. Kirschenman filed a petition with the circuit court for a writ of mandamus to compel the Board to submit the issue to a referendum. The circuit court denied the writ holding that the decision was administrative and therefore not referable. Kirschenman appeals raising two issues:

1. Whether the Board of Commissioner's grant of a conditional use permit was a legislative act and subject to referendum.

2. Whether Kirschenman is entitled to a writ of mandamus to compel the Board to place the referendum measure on the ballot.

We hold that the decision to allow the use permit was legislative, not administrative, and therefore referable and that Kirschenman was entitled to the writ.

## STANDARD OF REVIEW

[¶ 2.] The question of whether the Board's decision to grant the use permit was legislative or administrative is a question of law which we review de novo. *Voeltz v. Morrell & Co.*, 1997 SD 69, ¶ 9, 564 N.W.2d 315, 316 (citations omitted).

[¶ 3.] The decision to grant or deny a writ of mandamus is reviewed under an abuse of discretion standard. *Vitek v. Bon Homme County*, 2002 SD 45, ¶ 5, 644 N.W.2d 231, 232 (citing *Baker v. Atkinson*, 2001 SD 49, ¶ 12, 625 N.W.2d 265, 269–270) (additional citations omitted). In order to compel the Board to submit the decision to referendum, Kirschenman must have "a clear legal right to performance of the specific duty sought to be compelled," and the Board "must have a definite legal obligation to perform that duty." *Vitek*, 2002 SD 45, at ¶ 8, 644 N.W.2d at 234.

[¶ 4.] **1. WHETHER THE BOARD OF COMMISSIONER'S GRANT OF A CONDITIONAL USE PERMIT WAS A LEGISLATIVE ACT AND SUBJECT TO REFERENDUM.**

[¶ 5.] The citizens of South Dakota have a constitutionally established right to refer legislative actions to a public vote. SDConst art III, § 1. The South Dakota Code provides that the authority granted to municipal governing bodies to make legislative decisions is subject to the referendum process. SDCL 7–18A–15.1; *See also, Wang v. Patterson*, 469 N.W.2d 577, 578 (S.D.1991). However, administrative decisions by those governing bodies are not referable. SDCL 7–18A–15.1. Thus our first inquiry is whether the decision of the Board to grant the use permit was legislative or administrative. The term "legislative" has been defined by the legislature as:

[a] decision that enacts a permanent law or lays down a rule of conduct or

course of policy for the guidance of citizens or their officers. Any matter of a permanent or general character is a legislative decision.

SDCL 7–18A–15.1. An "administrative decision" is:

one that merely puts into execution a plan already adopted by the governing body itself or by the Legislature. Supervision of a program is an administrative decision. Hiring, disciplining and setting the salaries of employees are administrative decisions.

*Id.*

[¶ 6.] We first discussed the distinction between administrative and legislative decisions in *Wang,* where we stated,

[t]he distinction is rooted in realism. Clearly, all municipal action cannot be subject to local review by the electorate. "If government is to function there must be some area in which representative action will be final. In many situations it is difficult to determine how far the limitations should go. The courts must draw the line in these situations and in so doing must balance two interests— the protection of city government from harassment as against the benefits of direct legislation by the people."

469 N.W.2d at 579 (quoting *D'Ercole v. Mayor and Council of Norwood,* 198 N.J.Super. 531, 487 A.2d 1266 (App.Div. 1984)) (citations omitted).

[¶ 7.] We have held that where the local government has discretion as to what it may do and it acts under that discretion, it is a legislative act subject to referendum. *Wang,* 469 N.W.2d at 580. Furthermore, in determining whether an act is legislative or administrative, we apply a liberal rule of construction to permit citizens to exercise their powers of referendum. *Id.* In this case, the Board had the power to decide whether to grant a conditional use permit. Section 1805 of the County zoning ordinance provides in part,

The Board of Adjustment shall have the power to hear and decide, in accordance with the provisions of this ordinance, requests for conditional uses or for decisions upon other special questions upon which the Board of Adjustment is authorized by this ordinance to pass: to decide such questions as are involved in determining whether conditional uses should be granted: and to grant conditional uses with such conditions and safeguards as are appropriate under this ordinance, or to deny conditional uses when not in harmony with the purpose and intent of this ordinance.

The Board retains complete discretion to determine whether to grant or deny particular conditional use permits. Prior to the Board's vote, these residents had no notice that a 3,200–head hog confinement facility would be placed in their county. As such, we hold that the Board's action was legislative and subject to referendum.

[¶ 8.] The Board argues that our recent decision in *Vitek* is determinative. The Board points to a footnote in the opinion which provided that if the county had granted a variance, "neither permitted nor contemplated under the county's zoning law, the grant of the variance would be legislative and not administrative." *Vitek,* 2002 SD 45, 644 N.W.2d at 233. This statement, the Board contends, leads to the conclusion that since § 1805 provides the Board the power to grant use permits, the action is administrative. The Board ignores the language leading to the footnote which stated, "[i]t would appear that a variance of this nature [allowing for a 3,300–head hog confinement facility] is substantial and would be legislative and therefore subject to referendum, but we are unable to discern whether this is true

because of an incomplete record." *Vitek*, 2002 SD 45 at ¶ 7, 644 N.W.2d at 233. The footnote in *Vitek* was not intended to allow counties to deny citizens their power of referendum by merely giving a board the blanket power to grant or deny a conditional use permit. This decision is one that affects not only Meyer and his immediate neighbors, but the entire county. This direct and immediate impact on the electors in Hutchinson County weighs heavily in favor of allowing the electors themselves to determine whether the facility should be allowed.

[¶ 9.] The Board next argues that because the zoning ordinance allows it to grant conditional use permits, and specifically states that one of the uses allowed is "animal feeding operation lagoons and holding facilities," the citizens of Hutchinson County should have taken action at the time the ordinance was created. However, just as in *Wang*, the fact that the ordinance lays out the possibility of allowing such uses did nothing to put the voters on notice that such a use would ultimately be allowed, or, even if it did, that it would permit a feeding operation of this size. Our analysis in *Wang* is equally applicable in this case. First, the ordinance merely authorizes the Board to grant or deny use permits. It does not create a "plan" of allowing such permits which would apprise citizens of the Board's decision to allow such a facility. Second, and perhaps more importantly, the ordinance itself lays out no objective criteria upon which the Board would rely in determining whether to allow a 3,200–head hog confinement facility. This ordinance is simply an open-ended statement that the Board is allowed to grant or deny a use permit for an animal confinement facility. There are no standards or conditions for determining where, when or how such a facility would be allowed. For example, no conditions are specified concerning the number of permit-

ted animals, proximity to residences, water sources, or other clear objective criteria. In fact, it is impossible to "put [a plan] into execution" where there is no plan "already adopted by the governing body." *See* SDCL 7–18A–15.1. In the absence of such objective criteria, the Board's grant of a conditional use permit was not administrative. Finally, the Board's argument would mean that the citizens of Hutchinson County could never call for a referendum on a use permit because it is past the time that a referendum could be called on this general zoning ordinance. *Wang*, 469 N.W.2d at 580. In this instance, the "benefits of direct legislation" outweigh the potential for harassment of the local governing body. The decision of the Board was legislative and therefore referable.

[¶ 10.] **2. WHETHER KIRSCHENMAN IS ENTITLED TO A WRIT OF MANDAMUS TO COMPEL THE HUTCHINSON COUNTY AUDITOR TO PLACE THE REFERENDUM MEASURE ON THE BALLOT.**

▆▆ [¶ 11.] Kirschenman seeks a writ of mandamus to compel the County Auditor to place this issue on the ballot as a referendum. A writ of mandamus is an exceptional remedy. It is used,

> to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

SDCL 21–29–1. Mandamus will issue only "where there is not a plain, speedy and adequate remedy, in the ordinary course of law." SDCL 21–29–2. Thus, in order to prevail, Kirschenman "must show that he

had a clear legal right to submit [the Board's] decision to the referendum process, and that [the Board] must have a definite legal obligation to submit its decision to the referendum process." *Vitek*, 2002 SD 45 at ¶ 8, 644 N.W.2d at 234.

[¶ 12.] The Board asserts that the exclusive remedy provisions of SDCL 7–8–27 and SDCL 7–8–32 preclude Kirschenman's action for a writ. However, as we stated in *Vitek*, "[w]hile the direct appeal provided for in [these] statute[s] represent [an] exclusive statutory remedy, [they] trump neither the South Dakota Constitution nor the statutes that implement it." 2002 SD 45 at ¶ 9, 644 N.W.2d at 234. The referendum power is reserved to the people of South Dakota through our constitution. SDConst Art III § 1. This right is specifically extended to the legislative actions of a Board of County Commissioners by SDCL 7–18A–15.1. Kirschenman therefore has a "clear legal right" to submit this decision to referendum. The legal obligation of the County to submit the referendum petition to a vote is provided by SDCL 7–18A–16. Kirschenman is therefore entitled to a writ of mandamus to compel placing this decision before the voters of Hutchinson County. The circuit court is reversed.

[¶ 13.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 14.] MEIERHENRY, Justice, not having been a member of the Court, at the time this action was submitted to the Court, did not participate.