2005 SD 93

John BECHEN and The Moody County Chapter of Dakota Rural Action, Petitioners and Appellants,

v.

MOODY COUNTY BOARD OF COMMISSIONERS, Alvin Gullickson, Martin May, Kenneth Doyle, Bill Nibbelink and Jean Larson, County Auditor, Respondents and Appellees,

and

Britannia Dairy, LLP and Rex Nederend Family Trust, Intervenors and Appellees.

Nos. 23372, 23388.

Supreme Court of South Dakota.

Argued March 23, 2005.

Decided Aug. 24, 2005.

James Abourezk and Todd Epp of Abourezk and Epp Law Office, Sioux Falls, South Dakota, Attorneys for petitioners and appellants.

William J. Ellingson, Moody County State's Attorney, Flandreau, South Dakota, Attorney for respondents and appellees.

Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, South Dakota, Attorneys for intervenor and appellee Britannia Dairy.

William G. Beck of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for intervenor and appellee Rex Nederend Family Trust.

LOVRIEN, Circuit Judge.

[¶ 1.] John Bechen and the Moody County Chapter of Dakota Rural Action (collectively Bechen) appeal from a judg-ment and order denying an application for a writ of mandamus. Bechen applied for a writ of mandamus to require Moody County to hold a referendum vote on a decision by the Moody County Board of Adjustment (Board) to issue conditional use permits for two proposed concentrated animal feeding operations. Bechen argues the trial court erred when it ruled that the decision to issue the permits was administrative and, therefore, not referable, and when it failed to rule on whether a Board decision granting a conditional use permit can be referred to a vote of the people.

## FACTS AND PROCEDURE

[¶ 2.] The Moody County Commission (Commission) adopted a resolution approving the Moody County Comprehensive Land Use Plan (CLUP) on December 23, 2002. A summary of the CLUP was published on January 1, 2003, and the plan became effective on January 21, 2003. CLUP was intended to be a statement of policy that would guide the land use decisions made by the county's governmental officials.

[¶ 3.] On January 21, 2003, Commission adopted the Moody County Zoning Ordinance. Notice of its adoption was published on January 25, 2003 and February 5, 2003. The zoning ordinance became effective on February 25, 2003. The zoning ordinance is a complete and comprehensive ordinance based on the CLUP guidelines. Both documents recognize the possibility of concentrated animal feeding operations being sited within Moody County, and provide guidelines for their placement, approval and regulation.[1]

[¶ 4.] In March 2004 Rex Nederend Family Trust (Nederend) and the Britannia Dairy (Britannia) applied for conditional use permits pursuant to the Moody

---

1. Bechen does not seek to refer the comprehensive zoning ordinance. Rather, Bechen seeks to refer the decision to grant certain conditional use permits under this ordinance.

County zoning ordinance. Nederend and Britannia sought to construct separate concentrated animal feeding operations within Moody County. The operations were to feed and house between 2,000 and 3,600 head of dairy cattle. All the necessary publications and notices were made and on April 6, 2004, a public hearing was held regarding the permits. At the end of the hearing, Board announced its decision to grant the permits. The minutes of the Board were filed on that day but were not published.

[¶ 5.] Referendum petitions were submitted to the Moody County Auditor on June 7, 2004 who presented these petitions to Commission. On June 23, 2004, Commission denied the petition for a referendum vote. Commission met to reconsider its decision on June 25, 2003 but again rejected the referendum petitions. Commission based its decision on the belief that the decision to grant the conditional use permits was administrative and therefore not subject to a referendum vote of the county's citizens.

[¶ 6.] Approximately sixty days after Commission rejected the referendum petitions, Bechen applied for a writ of mandamus. Bechen asked the circuit court to compel Moody County to schedule a public vote on the Board's decision to grant the conditional use permits. Commission opposed the writ based on its view that the decision to grant the conditional use permits was administrative in nature. Nederend and Britannia were allowed to intervene in support of Commission. The circuit court upheld Commission's refusal to hold a referendum vote.

[¶ 7.] The circuit court ruled that the decision approving the permits was administrative and not subject to referendum. The circuit court denied Bechen's petition for a writ of mandamus on August 18, 2004. Although the issue was before it, the circuit court did not rule on whether a decision by a county board of adjustment can be referred to a public vote.

[¶ 8.] On August 24, 2004, Bechen filed notice of appeal to this Court pursuant to SDCL 15–26A–3(4). On September 10, 2004, Commission, along with Nederend and Brittania, filed a notice of review pursuant to SDCL 15–26A–22. On appeal both parties raised several issues for review. The Court recognizes the dispositive issue in this case is whether the actions of a county board of adjustment can be referred to a vote of the citizens of that county.

## STANDARD OF REVIEW

[¶ 9.] The grant or denial of a writ of mandamus is discretionary, and reviewed under an abuse of discretion standard. *Vitek v. Bon Homme County Bd. of Com'rs*, 2002 SD 45, 644 N.W.2d 231. An abuse of discretion refers to the use of discretion that is clearly against reason and evidence. *State v. Almond*, 511 N.W.2d 572 (S.D.1994). "We do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision." *Id.* at 574. In order to compel Commission to submit the issue to referendum, Bechen must have "a clear legal right to performance of the specific duty sought," and the Commission "must have a definite legal obligation to perform that duty." *Vitek*, 2002 SD 45 at ¶ 8, 644 N.W.2d at 234.

## ANALYSIS AND DECISION

[¶ 10.] In 2000 the South Dakota Legislature provided for the creation of county boards of adjustment and empowered these boards to grant variances from the terms of county zoning ordinances. This power was to be exercised in appropriate cases and subject to appropriate conditions

and safeguards. SDCL 11–2–49. The legislature also provided that a county commission could either appoint a separate board of adjustment or the county commission could itself sit as the board of adjustment. SDCL 11–2–49 and 11–2–60. The county board of adjustment was created by and received its powers from the legislature through SDCL 11–2–49 through 11–2–65, and not from any act of the county government itself.

■ [¶ 11.] We note that when a county commission decides not to appoint a separate board of adjustment, but elects to sit as the board of adjustment, this does not mean that the county commission and the board of adjustment become a single entity. While the members of each board may be identical, each board remains a separate legal entity with its own distinct powers and responsibilities under state law. In *Kirschenman v. Hutchinson County Bd.*, 2003 SD 4, 656 N.W.2d 330, the Court did not carefully draw this distinction and was not precise in the terminology it used. To the extent that *Kirschenman* can be read to treat a board of

county commissioners as identical to a county board of adjustment, *Kirschenman* is overruled.

ISSUE

[¶ 12.] **Are the decisions of a county board of adjustment subject to the referendum?**

■ [¶ 13.] In 1898 Article III, § 1 of the South Dakota Constitution was amended to grant the people of this state the power to refer the actions of the state legislature and municipalities to a public vote.[2] However, the text of the constitutional provision covered only the legislature and municipalities. No corresponding right to refer the actions of county government, or other local units of government, was provided for in the constitutional amendment.

[¶ 14.] In 1975 the South Dakota Legislature extended the right of referendum to ordinances or resolutions adopted by a board of county commissioners. SDCL 7–18A–15.[3] *See* Lowe, *Restrictions on Ini-*

---

2.  SDConst art III, § 1, as amended in 1898, provided:

    The legislative power of the state shall be vested in a legislature which shall consist of a senate and house of representatives. However, the people expressly reserve to themselves the right to propose measures, which shall be submitted to a vote of the electors of the state, and also the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions. Not more than five percent of the qualified electors of the state shall be required to invoke either the initiative or the referendum.

    This section shall not be construed so as to deprive the legislature or any member thereof of the right to propose any measure. The veto power of the executive shall not be

exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by vote of the electors of the state shall be: "Be it enacted by the people of South Dakota." The legislature shall make suitable provisions for carrying into effect the provisions of this section.

3.  SDCL 7–18A–15 provides:

    Any ordinance or resolution adopted by a board of county commissioners may be referred to a vote of the qualified voters of the county by the filing of a petition signed by five percent of the registered voters in the county, based upon the total number of registered voters at the last preceding general election, except such ordinances and resolutions as may be necessary for the immediate preservation of the public peace, health or safety, or for the support of the county government and its existing public institutions.

*tiative and Referendum Powers in South Dakota*, 28 SDLRev 53 (1982). This Court upheld the constitutionality of SDCL 7–18A–15 in *Hofer v. Bd. of Cty. Com'rs of McCook Cty.*, 334 N.W.2d 507 (S.D.1983).

[¶ 15.] We have described the people's power of referral as a right that is to be interpreted liberally and in such a way as to permit the exercise of the people's referendum powers. *Kirschenman*, 2003 SD 4 at ¶ 7, 656 N.W.2d at 333; *Taylor Properties v. Union County*, 1998 SD 90, 583 N.W.2d 638. We have long upheld the people's right to refer acts of the state legislature, local municipalities, and county commissions to a public vote. However, the question whether the actions of a county board of adjustment may be referred to a public vote is one of first impression for this Court.

[¶ 16.] Commission argues that the provisions of SDCL 7–18A–15 did not create a broad right to refer the actions of "county government" like Article III, § 1 of the South Dakota Constitution created the right to refer actions of municipalities. Rather SDCL 7–18A–15 limited the right to refer actions of county government to ordinances and resolutions adopted by a board of county commissioners. Commission argues that there is no statutory right to refer the actions of a county board of adjustment. We agree.

[¶ 17.] We first note that SDCL 7–18A–15 is clear and unambiguous and limits the referendum to "any ordinance or resolution adopted by a board of county commissioners." When the language of a statute is clear and unambiguous on its face, words and phrases must be given their plain meaning. *Esling v. Krambeck*, 2003 SD 59, ¶ 6, 663 N.W.2d 671, 676. Textually, there can be no interpretation that SDCL 7–18A–15 applies the power of referendum to a county board of adjustment.

[¶ 18.] Next we note that when the legislature decided to extend the referendum to counties, it could have included broad language similar to that used for municipalities. It could have substituted county governing bodies or county government in place of board of county commissioners. The legislature chose not to do so. We must conclude that the legislature intended the referendum provisions of SDCL 7–18A–15 to cover only the actions of county commissions and not other county boards such as the county board of adjustment.

[¶ 19.] In addition, had the legislature intended that the actions of a county board of adjustment be subject to referendum we would also expect that the legislature would have established a procedure for that to be accomplished. It did not. We note that the procedure to refer actions of a board of county commissioners is carefully crafted. It requires the publication of both an ordinance and a resolution once approved by a board of county commissioners.[4] It also provides that an approved ordinance or resolution not take effect until the twentieth day after its publication.[5] A petition to refer an ordinance

---

4. SDCL 7–18A–5 provides for the publication of an ordinance, and SDCL 7–18A–7 for the publication of a resolution.

5. SDCL 7–18A–8 provides:
   Except such resolutions or ordinances as may be necessary for the immediate preservation of the public peace, health, or safety, or support of the county government and its existing public institutions; which provide for an election or hearing on an improvement or assessment; or which call for bids which take effect upon the passage and publication thereof, every resolution or ordinance passed by a board shall take effect on the twentieth day after its completed publication unless suspended by operation of a referendum.

or resolution may be filed with the auditor within twenty days after its publication.[6] The filing of a valid petition to refer suspends the effective date of the ordinance or resolution.[7] The filing of a petition also triggers various other statutes designed to bring the matter to a vote of the people.

[¶ 20.] By contrast, a board of adjustment is not required to publish its minutes. The minutes of its proceedings, the vote of each member upon each question, records of its examination and other official actions need only be filed in the office of the board of adjustment.[8] Thus the provisions of SDCL 7–18A–16, setting a twenty day period from the date of publication during which to file a petition to refer, cannot be applied to a county board of adjustment which is not required to publish its decisions. SDCL ch 7–18A is silent as to how long an aggrieved person has to file a petition to refer an action of a board of adjustment. It also makes no provision to stay a decision taken by a board of adjustment to allow time for a petition to be filed or for an election to be held.[9]

[¶ 21.] The legislature has not established a procedure to allow a decision made by a board of adjustment to be subject to referendum. We do not believe that this was an oversight, given the carefully crafted procedure established by the legislature to refer decisions of a county commission. Thus we must conclude that the legislature did not intend that the actions of boards of adjustment be subject to referendum.

[¶ 22.] Finally, we would expect that if the legislature had intended that the actions of a county board of adjustment not be subject to the referendum then the legislature might reasonably provide some other method of review. This the legislature has done. The legislature has enacted a comprehensive statutory scheme that allows the appeal of a decision by a board of adjustment to the circuit court. *In re Yankton County Com'n*, 2003 SD 109, 670 N.W.2d 34. SDCL 11–2–61 provides that any person aggrieved by a decision of a board of adjustment can petition the circuit court for a review of the legality of that decision. This petition must be presented to the court within thirty days of the filing of the decision with the office of the board of adjustment. *Id.* The circuit

---

6. SDCL 7–18A–16 provides:

   A petition to refer an ordinance or resolution subject to referendum may be filed with the auditor within twenty days after its publication. The filing of such a petition shall require the submission of any such ordinance or resolution to a vote of the qualified voters of the county for its rejection or approval.

7. SDCL 7–18A–8, *supra.*

8. SDCL 11–2–52 provides:

   The board of adjustment shall keep minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the board of adjustment and are public records.

   However, the board of adjustment may destroy any record that the records destruction board, acting pursuant to § 1–27–19, declares to have no further administrative, legal, fiscal, research, or historic value.

9. Bechen asks this Court to require boards of adjustment to publish their minutes in the official newspaper of the county. According to Bechen this would clear what he has labeled a murky procedure for referral of a board's decision. Bechen argues that such publication would give citizens a benchmark with which to start timing the twenty days within which they must gather the appropriate signatures to refer a board's decision. Not only is the Court being asked to find that the referendum exists as to decisions of county boards of adjustment, we are also being asked to create the procedure necessary to put that right into effect. We decline the invitation to legislate by judicial fiat.

court may then affirm, reverse, or modify the decision of the board of adjustment. SDCL 11–2–65.

■ [¶ 23.] Given the fact that a careful review of both SDCL ch 7–18A and SDCL 11–2–49 through 11–2–65 reveals no statutory provision giving the people the right to refer the decisions of a county board of adjustment, Bechen argues that the language of SDCL 9–20–18 [10] applies to county boards of adjustment, and that this Court has sanctioned such an interpretation. SDCL 9–20–18 essentially states that the actions of municipal governing boards are subject to referendum. Bechen argues this provision should be read to include those boards that operate under county commissions.

[¶ 24.] The South Dakota Constitution gives the state legislature the power to classify and organize units of local government. SDConst art IX, § 1. Under that power, Title 9 of the South Dakota Codified Law was enacted to organize and regulate municipalities. SDCL 9–1–1(1) defines a municipality as "all cities and towns organized under the laws of this state but shall not include any other political subdivisions[.]" Further, SDCL 9–1–1(2) defines a "governing body" as "the board of trustees, the board of commissioners, or the common council, as the case may be, of a municipality concerned or affected[.]" Based on the definitional provisions of SDCL 9–1–1 it is clear the language "municipal governing boards" does not encompass county boards of adjustment. SDCL 9–20–18 applies the people's power of referendum to the actions of the governing bodies of all cities and towns organized

under the laws of South Dakota, specifically excluding all other political subdivisions. Again, we note that when the language of the statutes is clear and unambiguous, words and phrases are given their plain meaning. *Esling,* 2003 SD 59 at ¶ 6, 663 N.W.2d at 676. No reasonable reading of SDCL 9–20–18 could lead to the conclusion that it applies to either county government or a county board of adjustment.

[¶ 25.] Despite these textual limitations, Bechen argues this Court has extended SDCL 9–20–18 to cover county boards of adjustment in *Kirschenman v. Hutchinson Co. Board of Commissioners, supra.* In *Kirschenman,* the Hutchinson County Commission granted a conditional land use permit for a concentrated animal feeding operation, and then rejected attempts to refer that action to a public vote. The circuit court rejected the petition for writ of mandamus on the grounds that the action by the county commission was administrative and therefore not referable.

[¶ 26.] On appeal the parties argued the legislative versus administrative nature of the county commission's action. We reached the conclusion that the action of the county commission was legislative and therefore reachable through referral to the people. In the *Kirschenman* opinion, this Court cited SDCL 7–18A–15.1 for the proposition that "The South Dakota Code provides that the authority granted to municipal governing bodies to make legislative decisions is subject to the referendum process." *Id.,* 2003 SD 4 at ¶ 5, 656 N.W.2d at 332. Bechen argues the use of that language to help decide a question involving a county decision accomplished a

---

**10.** SDCL 9–20–18 provides:

The legislature finds that in making past grants of decision-making authority to municipal governing authorities, its intent was to grant that authority to the governing bodies of municipalities and that such ac-

tions, unless otherwise excluded from the referendum and initiative process by other state law, are subject to the initiative and referendum process. Therefore, the contrary holding in *Baker v. Jackson,* 372 N.W.2d 142 (S.D.1985) is hereby abrogated.

judicial extension of SDCL 9–20–18 to county government. According to Bechen, the only conclusion that can be drawn is that boards of adjustment fall under the people's referendum powers. We do not agree.

[¶ 27.] A review of our opinion in *Kirschenman* indicates the language above to be dicta of a precatory nature. In *Kirschenman*, this Court dealt exclusively with the question of whether an action was legislative versus administrative. In reaching our decision that the Hutchinson County Commission had acted in a legislative manner we relied upon the provisions of SDCL 7–18A–15.1 and 7–18A–16. Any reference made in *Kirschenman* to the municipal referendum powers was only included as an attempt to explain our legislative versus administrative decision through the use of analogy.[11]

### CONCLUSION

[¶ 28.] Bechen has sought a writ of mandamus to compel Commission to place the decision of the Board to issue two conditional use permits to a public vote. In order for Bechen to successfully obtain the writ he must have a clear legal right to have the issue placed on a public ballot, and Commission must have a definite legal obligation to place the issue before the citizens of the county. *Vitek*, 2002 SD 45 at ¶ 8, 644 N.W.2d at 234. Since the decisions of a board of adjustment cannot be referred to a public vote, Bechen does not have a legal right to submit the decision of Board to a vote, and Commission does not have a legal obligation to place the issue on the ballot. The judgment and order denying the writ of mandamus is affirmed.

[¶ 29.] GILBERTSON, Chief Justice, KONENKAMP and ZINTER, Justices, and KEAN, Circuit Judge, concur.

[¶ 30.] LOVRIEN, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 31.] KEAN, Circuit Judge, for MEIERHENRY, Justice, disqualified.

---

**11.** Regrettably, the language quoted above has caused some confusion as to the exact reach *Kirschenman* has in South Dakota referendum jurisprudence. *Kirschenman* was intended to be a discussion of the difference between legislative and administrative actions and nothing more. Our decision in *Kirschenman* was not intended to suggest an extension of the power of referendum in county government other than actions taken by a county commission.