#23865, #23887-a-JKM

**2006 SD 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KIRK JENSEN,                                        Petitioner and Appellant,

  v.

LINCOLN COUNTY BOARD OF
COMMISSIONERS and the LINCOLN
COUNTY PLANNING AND ZONING
COMMISSION,                                         Respondents and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE BRADLEY G. ZELL
Judge

\* \* \* \*

JAMES G. ABOUREZK of
Abourezk Law Offices, P.C.              Attorneys for petitioner
Sioux Falls, South Dakota               and appellant.

THOMAS R. WOLLMAN
Lincoln County State's Attorney

MICHAEL F. NADOLSKI
Lincoln County Deputy
  State's Attorney                      Attorneys for respondents
Sioux Falls, South Dakota               and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 20, 2006

OPINION FILED **07/05/06**

MEIERHENRY, Justice.

[¶1.]    Kirk Jensen (Jensen) sought a writ of mandamus against the Lincoln County Planning and Zoning Commission (Planning Commission) and Lincoln County Board of County Commissioners (Board) to compel enforcement of a zoning ordinance. The circuit court denied Jensen's petition. Jensen appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

[¶2.]    Jensen's family farm and residence abuts the feedlot of his neighbor, Darwin Hazel (Hazel). Jensen and Hazel have been farming side by side since 1987. Hazel has been farming and feeding cattle with his father at the site since 1972. The distance between Jensen's residence and Hazel's feedlot is approximately 150 feet. Hazel has operated the feedlot at this location for the last thirty years.

[¶3.]    In May of 2005, Hazel applied for a conditional use permit for a Class D concentrated animal feeding operation (CAFO) from the Planning Commission. The Planning Commission approved the application and granted Hazel a conditional use permit for the feedlot. Because of the close proximity of the feedlot to Jensen's residence, Jensen challenged the permit by appealing to the Board. Jensen claimed that the feedlot did not meet the zoning setback requirements. The Board rejected Jensen's challenge and affirmed the Planning Commission's decision.

[¶4.]    Subsequent to the Board's decision, Jensen sought a writ of mandamus in circuit court. The application for the writ named as respondents both the Planning Commission and the Board (collectively County). Jensen sought to compel the County to enforce the zoning setback provisions for the feedlot. Jensen claimed that Hazel's proposed feedlot use constituted an expansion of a nonconforming use

and that it did not meet the CAFO setback requirement. He asked the circuit court to compel the County either to enforce the setback ordinance or to deny Hazel's conditional use permit. After a hearing on the matter, the circuit court denied the writ of mandamus. Jensen appeals and presents two issues for our review: (1) whether the circuit court abused its discretion in denying Jensen's application for a writ of mandamus, and (2) whether the circuit court erred in denying Jensen's motion for rehearing. The County also presents one issue for our review: whether the availability of a plain, speedy, and adequate remedy in the ordinary course of the law precludes issuance of a writ of mandamus.

## DECISION

### *Plain, Speedy, and Adequate Remedy at Law*

[¶5.]      A writ of mandamus is appropriate only when there is not a plain, speedy, and adequate remedy in the ordinary course of law. Black Hills Cent. R.R. v. City of Hill City, 2003 SD 152, ¶12, 674 NW2d 31, 34; *see also* SDCL 21-29-2. Consequently, the threshold question, raised by the County, is whether a mandamus action was available to Jensen. The County claims that he had a plain, speedy, and adequate remedy at law which precluded mandamus relief. Jensen's remedy, the County contends, is limited to an appeal to circuit court under the procedures set forth in SDCL 7-8-27, 7-8-29, and 7-8-30. The County points to the language of SDCL 7-8-32, which provides as follows:

> Appeal to the circuit court from decisions of the board of county commissioners, as provided in this chapter, is an exclusive remedy. Judicial review of county commission action shall be allowed only as provided in §§ 7-8-27, 7-8-28, 7-8-29, 7-8-30, and 7-8-31.

Citing *Kirchenman v. Hutchinson County Board of Commissioners* and *Vitek v. Bon Homme County Board of Commissioners*, the County urges the Court to limit the mandamus remedy against a County to the referendum process. *See Kirschenman*, 2003 SD 4, 656 NW2d 330 (finding that mandamus was appropriate to compel the submission of a conditional use permit to a referendum despite the exclusive remedy provisions of SDCL ch. 7-8); *Vitek*, 2002 SD 45, 644 NW2d 231 (holding that the exclusive remedy provisions of SDCL ch. 7-8 did not preclude the submission of a zoning decision to a referendum).

[¶6.]     An examination of the statutory provisions, however, does not lead us to the conclusion advanced by the County. In fact, in both Chapter 7-8 and Chapter 11-2, the Legislature recognized mandamus as a remedy when appealing from a decision of a board of county commission. In Chapter 11-2 (County Zoning), the Legislature specifically gave a taxpayer the right to bring a mandamus proceeding against "the proper official or officials" in order "to compel specific performance . . . of any duty required by" the state zoning laws or county ordinances. SDCL 11-2-35. In its entirety, the statute specifies:

> Any taxpayer of the county may institute mandamus proceedings in circuit court to compel specific performance by the proper official or officials of any duty required by this chapter and by any ordinance adopted thereunder.

SDCL 11-2-35.

[¶7.]     Likewise, in Chapter 7-8, the Legislature recognized mandamus as a remedy when decisions are appealed to circuit court. *See* SDCL 7-8-31. The Legislature generally provided that "all decisions of the board of county commissioners upon matters properly before it" can be appealed to circuit court.

SDCL 7-8-27.[1]  The Legislature also specified in SDCL 7-8-31 that when considering an appeal from a board of county commissioners, the circuit court may grant a mandamus.  The statute provides:

> The circuit court may make a final judgment and cause the same to be executed or may send the same back to the board of county commissioners with an order how to proceed, and require such board to comply therewith by *mandamus* or attachment as for contempt.

SDCL 7-8-31 (emphasis added).

[¶8.]        Additionally, the legislative history of SDCL 11-2-35 indicates the Legislature intended mandamus as an available remedy in appeals from county zoning decisions.  When enacted, the mandamus provision found in SDCL 11-2-35 was part of a larger reenactment bill "to establish County Planning Commissions, providing for their operation, the preparation of a comprehensive plan and the implementation thereof" which was passed by the South Dakota Legislature in 1967.  *See* 1967 SD Laws ch 20.  The provision now codified as SDCL 11-2-35 appeared as the last paragraph of the bill's final section entitled, "Enforcement."[2]  *Id*.  This provision remains unchanged from its original version.

---

1.     SDCL 7-8-27 provides:

> From all decisions of the board of county commissioners upon matters properly before it, there may be an appeal to the circuit court by any person aggrieved upon filing a bond in the amount of two hundred fifty dollars with one or more sureties to be approved by the county auditor conditioned that the appellant shall prosecute the appeal without delay and pay all costs that he may be adjudged to pay in the circuit court.  Such bond shall be executed to the county and may be sued in the name of the county upon breach of any condition therein.

2.     Section 13 of the Act read in its entirety as follows:

(continued . . .)

[¶9.]     Consequently, the County's claim that a writ of mandamus cannot be used to challenge a county commission zoning decision is without merit. The Legislature in SDCL 11-2-35 clearly gave taxpayers the right to seek mandamus relief against county officials when the officials fail to perform duties required by the zoning ordinances. Jensen's application for a writ of mandamus conformed to the language of SDCL 11-2-35. He asserted that the Planning Commission failed to

_____

(. . . continued)

> Section 13. Enforcement. The board shall provide for the enforcement of the provisions of this Chapter and of ordinances, resolutions, and regulations made thereunder, and may impose enforcement duties on any officer, department, agency, or employee of the County.
>
> It is declared unlawful for any person to violate any of the terms and provisions of this Chapter or the provisions of any ordinance, regulation, or other official control adopted by the board pursuant thereto. Violation thereof shall be a misdemeanor and may be punishable by a fine up to one hundred dollars for each and every day that any violator fails to comply with the provisions of this Chapter or any ordinance or regulation adopted pursuant to this Chapter. All fines for violation shall be paid to the county and shall be credited to the general revenue fund.
>
> In the event of a violation or a threatened violation of the regulations or restrictions of an ordinance adopted pursuant to this Chapter, the board of county commissioners or any member thereof, in addition to other remedies, may institute an appropriate action or proceedings to seek an injunction in a court of competent jurisdiction to prevent, restrain, correct or abate such violation or threatened violation and it is the duty of the state's attorney to institute such action.
>
> Any taxpayer of the county may institute mandamus proceedings in circuit court to compel specific performance by the proper official or officials of any duty required by this Chapter and by any ordinance adopted thereunder.

1967 SD Laws ch 20, § 13.

enforce the mandates of the Lincoln County Zoning Ordinances. He further sought to compel the Planning Commission to perform its duties as established by the ordinances. Therefore, the circuit court did not err by considering the application on its merits and we proceed to review that decision.

*Mandamus*

*Clear Duty to Act*

[¶10.]     We have repeatedly reiterated the narrow application of a writ of mandamus. Mandamus is appropriate only if the petitioner can demonstrate a "'clear legal right to performance of the specific duty sought to be compelled'" and the respondent has "'a definite legal obligation'" to perform that duty. Sorensen v. Sommervold, 2005 SD 33, ¶6, 694 NW2d 266, 268 (citation omitted). We have stated,

> Mandamus is a potent, but precise remedy. Its power lies in its expediency; its precision in its narrow application. It commands the fulfillment of an existing legal duty, but creates no duty itself, and acts upon no doubtful or unsettled right.

Sorrels v. Queen of Peace Hosp., 1998 SD 12, ¶6, 575 NW2d 240, 242. Therefore, mandamus is appropriate only when the duty to act is unequivocal. Because a writ of mandamus is an extraordinary remedy granted only under exceptional circumstances, "entitlement must also be indisputable and clear." *Id.* ¶7, 575 NW2d at 243; *see also Black Hills C. R.R.*, 2003 SD 152, ¶13, 674 NW2d 31 at 34 ("a writ [of mandamus] will be issued only where the duty to act is clear"). We review a circuit court's grant or denial of an application for writ of mandamus under the abuse of discretion standard. Bechen v. Moody County Bd. of Comm'rs, 2005 SD 93,

¶9, 703 NW2d 662, 664. A circuit court abuses its discretion if its decision is clearly against reason and evidence. *Id.*

*County's Duty under the Zoning Ordinances*

[¶11.]         If the County has a specific duty to act, that duty must be apparent in state law and/or local zoning ordinances. Consequently, whether the County had a duty to deny Hazel's conditional use permit is controlled by the provisions in the zoning laws and ordinances. The Legislature, with restrictions, has delegated zoning authority to counties. *See generally* SDCL ch. 11-2. Pursuant to that authority, Lincoln County enacted a comprehensive zoning plan in 1995. In 2002, the County revised the section dealing with livestock confinement facilities and feedlots, effective March 2003. Pursuant to state law, the County has a duty to administer and enforce its own zoning ordinances. *See* SDCL 11-2-25 ("The board [of county commissioners] *shall* provide for the enforcement of the provisions of this chapter and of ordinances, resolutions, and regulations made thereunder"). It also has a duty to specify in its ordinances "each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, and the criteria for evaluating each conditional use." SDCL 11-2-17.3.

[¶12.]         Additionally, the Legislature limited the application of zoning ordinances for preexisting uses. *See* SDCL 11-2-26. The Legislature allowed preexisting uses to continue as follows:

> Any lawful use, lot, or occupancy of land or premises existing at the time of the adoption of the zoning ordinance may be continued, even though the use, lot, or occupation does not conform to the provisions of the ordinance. However, if the nonconforming use, lot, or occupancy is discontinued for a period

of more than one year, any subsequent use, lot, or occupancy of the land or premises shall conform with the zoning ordinance.

SDCL 11-2-26.  Following the legislative directive, the Lincoln County Zoning Ordinances in Article 15 set forth the circumstances under which preexisting uses are to continue.

[¶13.]     Likewise, both state law and county zoning ordinances define the nature of a conditional use.  The Legislature defines "conditional use" as follows:

[A]ny use that, owing to certain special characteristics attendant to its operation, may be permitted in a zoning district subject to the evaluation and approval by the approving authority specified in § 11-2-17.3.  A conditional use is subject to requirements that are different from the requirements imposed for any use permitted by right in the zoning district.

SDCL 11-2-17.4.  Additionally, the Legislature requires that before approving or disapproving a conditional use request, "[t]he approving authority shall consider the stated criteria, the objectives of the comprehensive plan, and the purpose of the zoning ordinance and its relevant zoning districts."  SDCL 11-2-17.3.  The Lincoln County Zoning Ordinances define a "conditional use," as "[a] use that would not be appropriate generally or without restriction throughout the zoning district, but which if controlled, would promote the public health, safety and welfare."

[¶14.]     The county ordinances recognize a CAFO as a conditional use for which a permit is required.[3]  The relevant ordinance defines a CAFO as follows:

*Concentrated Animal Feeding Operation.*  A lot, yard, corral, building or other area where animals have been, are, or will be stabled or confined for a total of 45 days or more during any 12

---

3.     A permitted special use is defined as "[a] use generally allowed in a zoning district but subject to the express, specified, or special restrictions applicable to that zoning district."

> month period, and where crops, vegetation, forage growth, or post harvest residues are not sustained over any portion of the lot or facility. Two or more animal feeding operations under common ownership are single animal operations if they adjoin each other, or if they use a common area, or if they use a common area or system for disposal of manure.

The ordinances provide for four classes of CAFOs based upon the animal unit ratio. Each class of CAFO must meet specific requirements as to waste management, distance separation, and other management controls. The permit that Hazel sought was for a Class D CAFO. A Class D CAFO consists of an animal unit ratio of 200 to 499 head of cattle.

[¶15.] There is no dispute that Hazel's application for a Class D CAFO meets all of the criteria for a conditional use permit except one. A Class D CAFO must be located at least 0.25 mile from a neighbor's dwelling. Hazel's CAFO is located closer than the 0.25 mile distance requirement. Since the feedlot does not meet the setback criterion, Jensen claims that the County has no authority to grant the conditional use permit. The County claims that the feedlot does not need to meet the setback criterion because the feedlot is a preexisting use and, therefore, exempt. Consequently, the County claims it has no duty to enforce that provision of its ordinances.

*Hazel's Status as Preexisting Use*

[¶16.] It appears that the parties generally agree that Hazel used the property as a feedlot before the adoption of the zoning ordinances and that Hazel could have continued to use the property in the same manner without a permit as long as he did not expand its use. For reasons not apparent from the record, however, Hazel sought a conditional use permit. His application sufficiently proved

that he met all criteria except for the setback requirement. Jensen argues that because Hazel applied for the permit, the County had a duty to deny the permit or require the setback. Under Jensen's premise, although the County had no duty to require Hazel to move his preexisting feedlot, the County acquired a duty to do so when Hazel applied for a conditional use permit.

[¶17.] Jensen further claims that Hazel has expanded the feedlot since the time the ordinance was adopted in 1995. Therefore, Jensen claims that the expanded feedlot should be characterized as a "nonconforming use" and be subject to the regulations governing nonconforming uses in Article 14 of the ordinances. Section 1405, "Extension and Enlargement," requires the County to consider certain criteria before granting a conditional use permit to a nonconforming use.[4] However, Jensen's interpretation of what constitutes an enlargement is contrary to what the County considers an enlargement. Jensen claims that any increase in the number of cattle constitutes an enlargement. Consequently, Jensen claims that

4. Section 1405 provides:

> A nonconforming use shall not be enlarged, extended, converted, reconstructed, or structurally altered unless such use is changed to a use permitted in the district in which the premise is located except that a conditional use permit may be authorized after the following criteria are given specific consideration:
> (A). *Effect* on surrounding property values.
> (B). *The density of land use* zoning for the subject and adjacent properties.
> (C). *The degree of hardship* to the applicant if permit is not granted.
> (D). *Demonstration of applicant's intent to use* the entire premises for such use prior to the adoption, revision or amendment of this Ordinance, as pertinent.

Hazel needed to show the exact number of cattle he had in the feedlot on July 25, 1995—the date the ordinances were adopted. The County claims that an enlargement is determined by ranges and that as long as the number of cattle was within the range of a Class D CAFO (200-499), the feedlot was not enlarged.

[¶18.]     The circuit court agreed with the County. Based on the evidence, the court determined that Hazel had owned and operated his feedlot prior to July 25, 1995. The court further found that, "over the last thirty years," the number of cattle in the feedlot ranged from "as few as 100 head of cattle and as many as 500 head of cattle." Thus, the circuit court concluded that Hazel's feedlot was a preexisting use which had not been enlarged.

[¶19.]     Having determined that Hazel's feedlot was an unenlarged preexisting feedlot, the court determined that the duty of the County was governed by the ordinance on preexisting uses. The preexisting use ordinance, Section 1509, provides as follows:

> *Preexisting Uses.* An existing use eligible for a Conditional Use permit which was lawfully established on the effective date of this Ordinance shall be deemed to have received a Conditional Use permit as herein required and shall be provided with such permit by the County upon request, and it shall not be a nonconforming use; provided, however, for any enlargement, extension, or relocation of such existing use, an application in accordance with this Article shall be required.

The court concluded that since Hazel was not expanding or enlarging his feedlot, Section 1509 required the County to grant Jensen a conditional use permit. The court held that Hazel's feedlot was a preexisting use which was lawfully established at the time the ordinances became effective. Even though the feedlot did not comply

with the 0.25 mile setback requirement, the court held that the feedlot's status as a preexisting use mandated that Hazel receive a conditional use permit.

[¶20.]    We agree with the circuit court. Although the ordinances are not a model of clarity, the plain meaning of Section 1509 supports the court's conclusion. Since Hazel's feedlot is located in a district zoned for agriculture, it is eligible for a conditional use permit for a CAFO. As an established lawful feedlot eligible for a Conditional Use permit *before* the adoption of the ordinance, the feedlot is "deemed to have received a Conditional Use permit . . . and shall be provided with such permit by the County upon request." The ordinance clearly directs that "it shall not be a nonconforming use." Only if the use is enlarged, extended, or relocated does it become a nonconforming use subject to an application for a conditional use permit. The circuit court's finding that the feedlot had not been enlarged is not clearly erroneous, and the court has not misapplied the law. Consequently, the argument that Hazel's feedlot is a nonconforming use is without merit.

*Writ of Mandamus Unavailable*

[¶21.]    As presented to the circuit court, Jensen has not established that he has "a clear legal right" to compel the County to deny Hazel's permit or require the setback. Nor has Jensen shown that the County has a specific duty to require Hazel's preexisting feedlot to abide by the setback criteria. Without such a showing, the narrow, precise remedy of mandamus is unavailable.

*Rehearing*

[¶22.]    There was some confusion at the hearing about the effective date of the ordinances establishing the requirements for different classes of CAFOs.

Consequently, some of the testimony dealt with a March 2003 date rather than the correct date of July 1995. After the hearing, but prior to the court's decision, the attorney for the County sent a letter to the circuit court clarifying the date. In response, Jensen moved for a rehearing. The circuit court denied the rehearing motion.[5] The record indicates that the correct date was presented as part of the testimony, and the circuit court had a copy of the ordinances with the correct date clearly shown. More importantly, the circuit court's findings of fact indicate that the court did view the evidence in light of the correct effective date. The court found: "Prior to *July 25, 1995*, Darwin Hazel owned and operated a feedlot for cattle." (Emphasis added). Also, the circuit court specifically indicated that the 1995 Revised Zoning Ordinance for Lincoln County became effective on July 25, 1995.

[¶23.]    On appeal, Jensen claims that the circuit court erred by not granting a rehearing. We have described a motion to reconsider as "'an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment.'" People *ex rel.* S.M.D.N., 2004 SD 5, ¶7, 674 NW2d 516, 517 (citation omitted). The same reasoning applies to a motion for a rehearing. The circuit court declined Jensen's request, and we will not second guess the court's decision. It appears the judge had all the information he needed to make a decision. Consequently, this issue is without merit.

---

5.    In his brief, Jensen states that the circuit court "failed to respond to the motion, presumably meaning that the motion was denied." The record, however, contains a copy of the motion bearing the word "denied," the date—"10/12/05"—and the judge's signature.

[¶24.] Affirmed.

[¶25.] GILBERTSON, Chief Justice, and KONENKAMP, and ZINTER, Justices, concur.

[¶26.] SABERS, Justice, concurs in part and dissents in part.


SABERS, Justice (concurring in part and dissenting in part).

[¶27.] I concur with the majority opinion that the County was under no duty to require Hazel to move his feedlot. However, the majority opinion incorrectly concludes the feedlot is a preexisting use that is "deemed to have received a Conditional Use permit." I dissent because although existing, Hazel's feedlot is not "eligible for a Conditional Use permit."[6]

[¶28.] Section 1509 of the zoning ordinance defines preexisting use:

> *Preexisting Uses.* An existing use *eligible for a Conditional Use permit* which was lawfully established on the effective date of this Ordinance shall be deemed to have received a Conditional Use permit as herein required and shall be provided with such permit by the County upon request, and it shall not be a nonconforming use; provided, however, for any enlargement, extension, or relocation of such existing use, an application in accordance with this Article shall be required.

(emphasis added). In order for Hazel to receive a conditional use permit based on existing use, he must show that his property was lawfully established as a feedlot on or prior to the effective passage date of the ordinance and that the feedlot is "eligible for a conditional use permit." This cannot be done because the minimum

---

6. Jensen's mandamus action asked the circuit court to compel the County to enforce the set back requirement or deny the conditional use permit.

distance requirement is 1320 feet and the County concedes Hazel's feedlot is only

150 feet from Jensen's house.

[¶29.]     Hazel's use of his land predates the zoning ordinance.  The use of his

property as a feedlot, however, is not "eligible for a Conditional Use permit" because

it is not one quarter mile from Jensen's dwelling as required by the conditional use

permit criteria for a class D CAFO.  Thus, contrary to the circuit court and majority

opinion, Hazel was not eligible for a conditional use permit.

[¶30.]     Nonconforming uses are defined as:

> A use of land, buildings, or premises that lawfully existed
> prior to the adoption, revision or amendment of this
> Ordinance (in any relevant particulars), but which fails,
> by reason of any such adoption, revision or amendment, to
> conform to the present use restrictions or regulations of
> the zoning district in which it is located.

Hazel's feedlot meets the definition of a nonconforming use:  use of land that

lawfully existed prior to the ordinance but fails to conform to present use

restrictions or requirements.

[¶31.]     The County is not under a clear duty to require Hazel to comply with

the quarter mile restriction because Section 1402 and 1403 of Article 14 on

nonconforming use provides:

> Section 1402.  *Continuation of Use.*  Subject to the
> provisions of this Article, the lawful use of a premise,
> lawfully established and existing immediately prior to
> the effective date of this Ordinance may be continued
> although such use does not conform to the provisions
> hereof.
>
> Section 1403.  *Use becoming nonconforming by change in
> Law or boundaries.*  Whenever the use of a premises
> becomes a nonconforming use through a change in zoning
> ordinance or district boundaries, such use may be

continued, although the use does not conform to the provisions of this Ordinance, as then applied.

Both sections permit Hazel to continue to use his property as a feedlot despite the fact it does not conform to the ordinance. The use of his property as a feedlot is grandfathered under these nonconforming use sections.

[¶32.] Jensen argues that Hazel impermissibly expanded his nonconforming use and, as a result, the County must comply with the provisions of Section 1405. *See* Majority Opinion fn. 4. However, Jensen's argument fails because he has made no showing Hazel expanded the feedlot.

[¶33.] In summary, the County is under no duty to require Hazel to move his feedlot because it is a lawful nonconforming use. However, Hazel is not entitled to a conditional use permit because the existing use of his property is not eligible for a conditional use permit. Accordingly, I dissent and would compel the County to deny Hazel's conditional use permit.